DOMENGEAUX, Judge.
Defendant-appellant Quick Manufacturing Company was held responsible by a jury for personal injuries to plaintiff-appellee Lenix Stelly, resulting in an award to Stelly for his injuries. Quick has appealed suspensively to this court.
In September, 1962 the Vermilion Parish School Board, which employed plaintiff as a janitor, purchased a Springfield Model 62 TME riding lawnmower manufactured by defendant, from a local dealer, Mayer’s Hardware Store. The machine much resembled a miniature tractor, but was equipped with a rotary blade on its underside which was encased in a steel housing and could be raised or lowered to the desired cutting height by means of a vertical steel lever located on the right side of the engine. Power was supplied by a six horsepower Briggs and Stratton gasoline engine which defendant neither manufactured nor supplied, however, the original engine was installed by defendant at its factory. The engine compartment was formed by a grill in front, a metal hood which began at the front of the mower and sloped down to the rear of the engine, and a vertical metal plate between the operator’s seat and the rear of the engine. A generator-starter was located on the left side of the engine, on top of which was a pulley that was connected to another pulley on top of the engine by a belt which turned clockwise in a horizontal path. This assembly protruded slightly from under the hood, however its design called for a two-inch wide metal band, or shield, which went over the pulley and bolted down on either side of it. The design of the machine, then, was such that the operator thereof would be protected from all moving parts by metal shields.
On the morning of September 9, 1964 plaintiff and a fellow janitor, one Nelson Broussard, were engaged in mowing a strip of grass at the East Abbeville Elementary School, their place of employment for at least four of the immediately preceding years. The record is unsettled as to whether they were mowing side by side or one behind the other, as Broussard testified to both positions at different times in the trial, but it is established that each was riding a lawnmower, with plaintiff on the one in question and Broussard on a new mower acquired by the School Board only about one week previously, and that the two were traveling in the same direction. Suddenly plaintiff felt a strong sensation of pain in his groin area, for a few minutes after which he remembered nothing. Broussard first noticed that something was *304 amiss when he saw plaintiff standing beside his stopped mower in a bent over position and holding his groin. He also noted that gasoline was leaking on the plaintiff’s machine. Broussard pulled plaintiff away from the mower and escorted him toward the building where he was met by the principal of the school. Inspection revealed that plaintiff had suffered an injury to his right testicle and he was taken to the office of a local physician. The course of events thereafter is not relevant to our conclusion, and we therefore disregard plaintiff’s subsequent medical experiences.
At the scene of the accident Broussard and the principal found pieces of the above-mentioned starter-generator belt scattered around the lawnmower. Also a pet cock which had been located in the gasoline tank of the machine, in line with and behind the pulley atop the engine was found to' the left of, and some seven feet in front of the mower. No other objects were found in the vicinity of the mower, and those we have mentioned were not placed in evidence.
Plaintiff obviously concluding that he was struck by one of the objects that were found, filed suit against Quick Manufacturing Company alleging faulty design and manufacture of the mower. Also, charging that they were guilty of malpractice in their diagnosis and treatment of him, he sued four physicians. They, however, were absolved of negligence by the jury and that finding in favor of the doctors has not been appealed by plaintiff. We are therefore concerned herein only with defendant Quick Manufacturing Company’s appeal of the money judgment against it.
The law of Louisiana imposes liability on the manufacturer of an article for injuries caused by the use of the article, but only if it is proved that the article was faulty in design or manufacture and that the injury might reasonably have been foreseen by the manufacturer. Arnold v. United States Rubber Co., La.App., 203 So.2d 764; Meche v. Farmers Drier & Storage Co., La.App., 193 So.2d 807, writs refused, 250 La. 369, 195 So.2d 644. Bearing this in mind, we now examine plaintiff’s proof.
The strategy of plaintiff’s case generally revolves around the protruding generator-starter and the shield protecting it, but his specific thrusts are difficult to discern. Thus at certain points in the transcript he seems to assume that the shield was on the mower at the time of the accident, while his questioning of witnesses in regard to the appearance of the machine indicates his intention to show that the shield was not on the mower when it was delivered by the manufacturer. We think in either case he is in error. That the shield was on the mower when it left the factory is proved to our satisfaction by two factors: First, there was direct testimony that all Springfield Model 62 TME mowers were fitted with the shield while on the assembly line, and before being crated, at the factory; and second, a small part of the shield was found during the trial, still bolted to the starter-generator. Nevertheless, when certain photographs were made on behalf of plaintiff prior to the trial, the shield was not on the mower, nor was it present when the machine was produced at trial. None of the witnesses who were asked whether they noted any difference in the appearance of the mower prior to the accident, and its appearance in the courtroom, mentioned anything in regard to the shield. Finally, and most importantly, although three persons testified to seeing the pet cock and pieces of belt on the ground following the accident, none said he saw the shield or part thereof. We conclude therefore, that whereas the shield was on the mower when it left defendant’s factory, it was not in place when the accident occurred. Accordingly there is no validity to plaintiff’s implication that the shield was destroyed in the accident.
It would be unjustified conjecture to conclude that had the shield been on the mower, the accident would still have taken place. Nevertheless, plaintiff appears to advance *305 the theory that even had the shield been present, it would have been possible for an object to be flung from the right side of the engine by the spinning belt, that such object could then have traveled backwards at precisely the right angle to strike the small vertical shaft controlling the cutting height, and that the object could then have ricocheted off the shaft at such an angle as to be hurled into plaintiff’s groin. This possibility is so far beyond the realm of foreseeability as to verge on the ludicrous.
It was established that some 750,000 units like the one in question were manufactured by defendant before the design was changed to accommodate a larger engine, and there was no hint of any mishap involving any of them save the one at bar. This machine operated safely and successfully for two years preceding the accident during which time it was used to cut an approximate ten acres of grass once each week during the growing seasons. This, in spite of the fact that the projected life expectancy of the mower was a mere 250 hours of operating time, as its intended use 'was in suburbia on three quarters to one acre lots. Highly significant is the fact that only four days before the accident, the entire engine in the mower was changed by Mayer’s Hardware Store, who customarily serviced the machine. The engine was replaced because the original had worn out, however, there is no showing that the belt was changed and the indications are that it was not. Nevertheless neither Mayer’s Hardware Store nor anyone connected with it was made a party defendant.
Considering all of the foregoing, it is our conclusion that a finding on the part of the jury that the mowing machine was defective in design or manufacture, and that the injury was one which defendant should have foreseen, could only have been based on the rankest speculation and is certainly unsupported by the evidence. Determinations of negligence must be based on the evidence, and the trier of fact may not indulge in possibilities, probabilities, inferences, or assumptions. O’Pry v. Berdon, La.App., 149 So. 287. The verdict of the jury then, was manifestly erroneous, and the general presumption of correctness in favor of the trial court is overcome.
An appellant in this court has a right to a complete review of both the law and the facts, and when this court concludes that the trial court, be it judge or jury, has erred in its determination of either or both of those, the appellant is entitled to a reversal of the trial court’s findings. Barker v. Phoenix Insurance Co., La.App., 220 So.2d 720, and cases cited therein. Writs refused, 254 La. 134, 222 So.2d 883. Accordingly the judgment of the trial court must be reversed.
For the foregoing reasons, the judgment casting Quick Manufacturing Company is reversed and;
It is now ordered, adjudged, and decreed that there be judgment in favor of defendant Quick Manufacturing Company and against plaintiff Lenix Stelly, dismissing his suit. All costs in both courts are assessed to plaintiff Lenix Stelly.
Reversed and rendered.
FRUGÉ, J., respectfully dissents and agrees with the judgment of trial court.