441 So.2d 409 (1983)
Robert L. BROWN
v.
RUDY SMITH SERVICE, INC., a/k/a Rudy Smith Wrecking Service Company.
No. CA-0743.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1983.
*410 Michael A. Britt, Leon A. Crist, Leach & Paysse, New Orleans, for defendant-appellant.
Ronald P. Nabonne, New Orleans, for plaintiff-appellee.
Before SCHOTT, CIACCIO and WARD, JJ.
CIACCIO, Judge.
Defendant-appellant, Rudy Smith Service, Inc., was held responsible by the trial court for damages to a 1973 Chevrolet Corvette owned by plaintiff-appellee, Robert L. Brown. Plaintiff alleged the damages were caused by defendant's improper towing of the vehicle. The trial court agreed and awarded $2,433.02 to plaintiff as compensation for damages to the vehicle, inconvenience and loss of use.
Defendant has appealed suspensively from the judgment of the trial court. On appeal, three issues have been raised by defendant: (1) Did the trial court err by not accepting three of defendant's witnesses as experts in the field of automobile towing? (2) Did the evidence support the trial court's finding that the towing was improper? (3) Is there sufficient evidence to justify the amount of the trial court judgment? Finding merit in defendant's arguments, we reverse and render judgment in favor of defendant, dismissing plaintiff's suit.
Trial testimony established the following facts. In 1973, plaintiff purchased a new 1973 model Chevrolet Corvette. In December, 1979, plaintiff brought this car to Charles Coplen, an automobile mechanic, for repairs. Mr. Coplen testified at trial and was accepted by the court as an expert automobile mechanic.
Mr. Coplen testified that when he saw the car in December, 1979, it was in deplorable condition. According to Mr. Coplen, the car's mechanical workings (the condition of the engine was not discussed), the body, and the interior were all in need of repair. Plaintiff intended to restore the car despite Mr. Coplen's advice that if the car were his, he would try to sell it rather than repair it.
Toward this goal, plaintiff had Mr. Coplen completely restore the body. This work cost approximately $3,000.00. Plaintiff testified that upon completion of the body work, he drove his car from Mr. Coplen's shop to his house where he parked it *411 in his driveway. In contradiction of Mr. Coplen's testimony, plaintiff testified that after the body work was completed, the rest of the car was in good condition requiring only minor repairs.
In January of 1980 (according to plaintiff only two days after he retrieved his car from Mr. Coplen), in connection with an unrelated matter, the Constable for First City Court of The City of New Orleans effected a seizure of plaintiff's Corvette. At the request of the Constable, defendant towed the automobile from plaintiff's driveway to defendant's storage warehouse. The car remained in defendant's warehouse, undisturbed, until plaintiff picked it up.
Two of defendant's tow truck drivers participated in towing plaintiff's car. Both drivers testified concerning the procedures they followed when towing plaintiff's car. A deputy constable also testified to what he observed when the car was towed from plaintiff's residence.
Plaintiff's car had been backed into his driveway and was parked facing the street. The tow truck drivers unlocked the car, then disengaged the transmission linkage allowing the transmission to be shifted from "park" to "neutral." One of the trucks then towed the car by its front end, out of the driveway, into the street. Once in the street, the other tow truck then towed the car by its rear end from plaintiff's residence to defendant's warehouse.
The front wheels of plaintiff's vehicle were locked in a slightly turned position. Both truck drivers and the deputy constable testified that this condition did not create any problems in towing but did cause the car to ride slightly off center-line with the towing truck. (Not so much off center, however, as to be outside of the truck or into another lane of traffic.) One tow truck followed the other as it towed the car to the warehouse. In this manner the car was towed without observable mishap.
Before the end of January, plaintiff had secured a release for his car from the Constable. He then went to defendant's warehouse to get his car. Plaintiff testified that he was not allowed to see his car before signing the release. Defendant's president, however, testified that plaintiff was allowed to and did in fact inspect his car prior to signing the release. Nevertheless, plaintiff did sign a release, without any comment or reservations, which stated that he was receiving the car in the same condition as when it was seized. Plaintiff then removed the car from defendant's premises.
Plaintiff testified that he could not drive the car from defendant's warehouse because the steering was malfunctioning, so he pushed the car to a nearby area and in the process damaged the fender. Plaintiff then hailed a passing tow truck and had the car towed to Mr. Coplen's shop. Defendant's president testified that he observed this tow truck, but did not pay close attention to it. His recollection at trial was that it was not a conventional tow truck and may have been an old A-frame model tow truck.
Mr. Coplen confirmed that the car was towed to his shop. He did not participate in the towing operation, however, and could not provide any information about the tow truck or the towing methods employed. Plaintiff testified that a dolly was placed under the front end before the car was towed this second time. Placement of the dolly was accomplished by jacking up one side of the car and positioning the dolly, then jacking up the other side and completing the task.
The next day Mr. Coplen put the car up on the rack and following an inspection, provided plaintiff with an estimate of the repairs which would be needed to restore the car to its original factory condition. Plaintiff took some photographs of the condition of the car as it appeared upon the rack. These photographs were introduced at trial.
In his judgment the trial court concluded "that at least a portion of the damage to the structural frame of plaintiff's vehicle was a direct result of the manner in which it was being towed." He based this conclusion on "this court's belief that front wheel *412 assemblies are not designed to be towed for several miles ... in a canted position."
Plaintiff claims that his car was damaged because defendant negligently towed the car. Plaintiff has the burden of proving his claim by a preponderance of the evidence. This means that the evidence produced at trial must prove that more probably than not plaintiff's car was damaged while being towed by defendant because of the negligent manner in which defendant towed the car. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Fallon v. Dorsett, 344 So.2d 434 (La.App. 1st Cir.1977); Dimitry v. Bressler, 343 So.2d 358 (La.App. 4th Cir.1977).
The trial judge found that plaintiff's car was damaged by the negligent manner in which defendant towed the car. The standard of review by an appellate court of such a finding is that the appellate court should not disturb the finding of the trial court unless it is clearly wrong. The appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong. A finding may be clearly wrong in spite of the presence of some evidence in the record which, if believed, would support the finding. The appellate court should determine whether the district court judgment is clearly wrong considering all the evidence. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Here, the trial judge was clearly wrong. The evidence does not support the findings that more probably than not the car was damaged when towed by defendant or that defendant towed the car in a negligent manner. The record supports the conclusion that at the time defendant towed plaintiff's car, it had approximately 80,000 miles on it, and, according to a qualified expert auto mechanic, the car was mechanically in a worn-out, deplorable condition. This same expert mechanic inspected the car shortly after plaintiff retrieved it from defendant, but after the car had been towed again by some unknown towman with an unknown type of tow truck. Nevertheless, the testimony of this expert is noticeably devoid of any comment that the condition of the car after the seizure was any different from its condition prior to the seizure.
Mr. Coplen, the expert, was also unable to state which, if any, of the needed repairs were necessitated more probably than not as the result of any improper tow. The best he could do was describe which areas of disrepair could possibly result if the car had been improperly towed. He could not state whether the car had been improperly towed, nor could he state, assuming some towing damage, whether the tow by defendant or the subsequent tow to his shop had caused the damage. Further, those areas which could possibly be damaged by towing could not have all been damaged by a single tow, i.e., some might happen if the car was towed from the front, others if the car was towed from the rear. Both times the car was towed, it was towed from the rear, except for the 30 or so feet it was towed out of the driveway. The thrust of Mr. Coplen's testimony concerning the condition of the car was that mechanically the car was worn out.
This evidence is insufficient to support plaintiff's claim in at least two respects. First, the evidence fails to establish with the appropriate degree of probability, that the car suffered any damage during its seizure. Secondly, the evidence fails to establish, even assuming damage, that the damage was probably caused by defendant rather than during the second tow or simply because some of the parts were worn out or for any other reason.
Further, the evidence does not support a conclusion that defendant was negligent or did anything improper. The single basis of negligence relied upon by the trial judge was that defendant towed the car while the front wheels were locked in a slightly turned position. The only evidence concerning the effect of towing a car in this manner came from three of defendant's witnesses. These witnesses, with a combined *413 total of approximately 70 years towing experience, testified that towing a car with the wheels slightly turned does not cause damage to the car.
There is no evidence to support the trial judge's "belief" that such a towing procedure amounted to negligence or could in any way cause damage to the car. Determinations of negligence must be based on the evidence. The trier of fact may not indulge in mere possibilities. Fallon v. Dorsett, supra; Stelly v. Quick Manufacturing Company, 246 So.2d 302 (La.App. 3d Cir. 1971), writ refused 258 La. 767, 247 So.2d 864 (La.1971), cert. denied 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 273 (1971). The trial judge, in essence, took judicial notice that cars should not be towed with the front wheels locked in a slightly turned position. The resolution of material issues of disputed fact by judicial notice is improper. Pierce v. Board of Supervisors of Louisiana State University, 392 So.2d 460 (La.App. 1st Cir.1980); Acadia-Vermilion Rice Irrigating Company v. Broussard, 185 So.2d 908 (La. App. 3d Cir.1966).
Having rejected the trial court's basis for a finding of liability on the part of defendant, we will render herein such judgment as we conclude is just, legal and proper upon the record. La.C.C.P. art. 2164. A review of all the evidence convinces us that plaintiff did not carry his burden of proving more probably than not, that defendant damaged plaintiff's car by negligently towing the car. Accordingly, the judgment of the trial court must be reversed, and we must enter judgment in favor of defendant dismissing plaintiff's suit.
Having reached the above conclusion, it is unnecessary for us to consider the other two arguments of defendant-appellant, viz, whether three of defendant's witnesses should have been qualified as experts and whether the evidence supported the amount awarded for damages.
For the reasons stated, the judgment of the trial court is reversed. Judgment is hereby rendered in favor of defendant, dismissing plaintiff's suit. All costs are to be paid by plaintiff-appellee.
REVERSED.