CRAIN, Judge.
Plaintiff, Roger W. Robinson, alleges that he was injured while attending auto races at State Capitol Dragway in West Baton Rouge Parish. This action was instituted against defendants, Norman Pearah, Norman Pearah d/b/a State Capitol Drag-way, C & P Racetrack, Inc., National Hot Rod Association and K & K Insurance Company. After trial on the merits the jury returned a verdict in favor of defendants and the trial judge subsequently made the verdict the judgment of the court. The jury specifically found that there was no negligence and that negligence was not the proximate cause of the injury. Additionally, the jury found that defendants were not strictly liable to the plaintiff and strict liability was not the proximate cause of the injury. From this judgment plaintiffs appeal alleging that (1) the jury erred in not finding defendants negligent; (2) the jury erred in not finding defendants strictly liable; (3) the trial judge erroneously misled the jury by improperly explaining the nature and elements of strict liability; (4) the trial judge erred in denying plaintiffs motion for a judgment notwithstanding the verdict; and (5) the jury erred by failing to award damages to plaintiffs. We find it unnecessary to specifically consider assignments 1-3, because assuming error on the part of the jury in failing to find negligence or to apply strict liability, the jury was not manifestly erroneous in determining that neither negligence of defendants, nor the imposition of strict liability with reference to them, proximately caused plaintiffs’ damage.
CAUSATION
Appellants contend that they have proved by a preponderance of the evidence that defendants are liable under theories of negligence (La. C.C. art. 2315) and strict liability (La. C.C. art. 2317).
Under theories of negligence or strict liability the plaintiff bears the burden of proving defendant’s ownership or custody of the thing which caused the damage; a defect which created an unreasonable risk of harm to others; and causation. Farr v. Montgomery Ward and Co., Inc., 430 So.2d 1141 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983). Plaintiff must prove by a preponderance of the evidence that the injuries alleged were caused by defendant. Bourgeois v. Lake Development Corp., 498 So.2d 77 (La.App. 5th Cir.1986). Defendant’s conduct is a cause-in-fact of the harm to another if but for the conduct of defendant the damage would not have occurred, or if the conduct is a substantial factor in bringing about the damage.. Nix v. Brasly, 489 So.2d 1038 (La.App. 1st Cir.1986). “In the absence of a finding of causation, further consideration as to the conduct of the defendant is both immaterial and unnecessary.” Guillot v. Sandoz, 497 So.2d 753, 755 (La.App. 3d Cir.1986), writ denied, 501 So.2d 217 (La.1987). A factual determination by a trier of fact with reference to causation will not be disturbed on appeal unless manifestly erroneous. See Dofflemyer v. Gilley, 384 So.2d 435 (La.1980); Edwards v. Bankers and Shippers Insurance Co. of New York, 432 So.2d 1138 (La.App. 3d Cir.1983).
Robinson has been diagnosed as having first degree spondylolisthesis. Spondylolis-thesis is the “forward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth.” DOR-LAND’S ILLUSTRATED MEDICAL DICTIONARY 1239 (26th ed. 1981). Although the condition may be caused by trauma, its origin is more commonly congenital or developmental. First degree spondylolisthe-sis is often not symptomatic. It may periodically become symptomatic due to trauma, however, it is often symptomatic even when not traumatically induced.
Robinson testified at trial that he attended automobile races at State Capitol Drag-way on May 27,1984. He stood and turned around to stretch his legs when the bleachers on which he was standing suddenly “dropped in the middle and shifted forward” causing him to twist his left leg and *1073 fall backwards, resulting in injuries to his low back and left knee. He and his party moved to new seats in the same bleachers approximately three or four feet from their former seats. The bleachers were cleared twenty minutes later after a second “collapse” of the bleachers. Mary Alice Wright, Robinson’s sister, attended the racing event. She testified at trial that the bleachers collapsed into a “V.” However, when deposed before trial, she described the bleachers’ appearance as “kind of waved like.” Andrew McPhate, mechanical engineer, testified for plaintiffs regarding the construction of the bleachers. On cross-examination he stated that at most the footings sank lightly into the ground. There was no evidence to indicate a catastrophic sinking.
Robinson testified that he had been involved in five accidents before May 27, 1984, and had suffered only neck and shoulder strains in those accidents. Mrs. Robinson testified that Robinson had never missed a day of work prior to the alleged May 27, 1984, incident nor had he ever complained of back problems before May 27, 1984. However, the record reveals that:
(1) On February 7, 1980, Robinson was involved in an automobile collision for which he sought damages for cervical and thoracic sprain.
(2) On September 8, 1981, Robinson was injured in a work-related accident in which he struck his shoulder. He received worker’s compensation benefits during the five weeks he was unable to return to work.
(3) On November 27, 1981, Robinson was involved in an automobile collision. He sought damages for cervical and thoracic strain.
(4) On February 26, 1982, Robinson was involved in an automobile collision. He sought damages for pain in the shoulders, neck, back and lower back, and numbness in the hand. On March 1, 1982, Robinson was hospitalized for low back pain and neck pain. The diagnosis was first degree spondylolisthesis.
(5) On December 6, 1982, Robinson was involved in an automobile collision and sought damages for lumbo-sacral strain and sprain and cervical and spinal stress.
(6)On June 20, 1984, subsequent to the present accident, Robinson was involved in an automobile collision. He complained of low back pain.
Robinson testified that he experienced left knee and back pain on the day following the May 27, 1984, accident and on May 29, 1984, he consulted Dr. Gregory Floyd Nelson, chiropractor, and was treated by Dr. Nelson for those complaints. Dr. Nelson testified at trial that on May 29, 1984, Robinson complained of left knee and back pain. However, Dr. Nelson sent a written report to plaintiffs’ attorney listing the symptoms of which Robinson had complained on his May 29 visit as chest pain, mid-back stiffness in the joints, headaches, numbness in the leg and arms, pain in the neck, weakness to arms, unable to sleep because of pains in the back with hands continually falling asleep. Additionally, when deposed before trial, defense counsel queried Dr. Nelson regarding Robinson’s complaints on the May 29, 1984, visit. Dr. Nelson responded:
Mr. Robinson had pains in his chest, severe pains in the mid-back, a feeling of stiffness in the muscles and joints, severe headaches, numbness and tingling down the leg, numbness in both hands, pain throughout the entire neck, pain in the lower back, severe weakness in the arms and hand, hard to work because of pains in his back and hands falling asleep.
Complaints of left knee pain were not included in either the letter to plaintiffs’ attorney or the deposition.
Dr. Nelson’s report to plaintiffs’ attorney indicates that the alleged injury occurred while Robinson was seated in the bleachers. However, at trial Dr. Nelson testified that the accident occurred while Robinson was standing in the bleachers.
Charmaine Robinson, wife of Roger Robinson, testified that Robinson was not injured in the June 20, 1984, automobile collision. Robinson testified that after the accident occurred, he consulted Dr. Nelson and *1074 said “I don’t think anything’s wrong, but I feel like it would be best if you all checked it to make sure.” Dr. Nelson testified that he took x-rays of Robinson’s back on June 20, 1984, immediately after the automobile collision of that date. He compared the June 20, x-rays with those of June 12,1984, and determined that Robinson’s spine had shifted, most probably as a result of the June 20, 1984, accident. Robinson was required to receive daily chiropractic treatment for two weeks following the June 20, 1984, accident. Dr. Nelson testified that after two weeks of treatment, Robinson's condition was the same as it had been immediately prior to the June 20, accident. This conclusion was reached despite the fact that Robinson allegedly continuously suffered low back pain from the time of his initial treatment on May 29, 1984, to the date that he was discharged from chiropractic care in August, 1984, and despite the fact that Dr. Nelson was unable to distinguish between the pain attributed to the alleged May 27,1984, accident and that attributed to the June 20, 1984, accident.
On August 3, 1984, at the request of defendants, Robinson was evaluated by Dr. Clifton Shepherd, orthopedist. Robinson related to Dr. Shepherd that while seated in the bleachers, the bleacher next to him, not the bleacher on which he was seated, slipped forward causing him to twist his knee and land on his back. Dr. Shepherd testified that the purpose of documenting previous and present injuries and the manner of their occurrence is to assist the physician in evaluating a patient’s condition and to determine whether the patient’s complaints stem from a preexisting condition. When questioned by Dr. Shepherd regarding whether he had injured his back in any prior or subsequent accidents Robinson related that he had been involved in an accident in 1980 and one in 1982. He denied having any low back pain prior to the alleged May 27, 1984, incident.
Dr. Shepherd observed Robinson undress for the examination, position himself on the examining table and shook hands with Robinson at the conclusion of the visit. In Dr. Shepherd’s opinion these actions were contradictory to the muscle weakness exhibited by Robinson during the examination; Robinson had significantly exaggerated his condition; and was uncooperative during the examination. He stated that he found nothing objectively wrong with Robinson and had insufficient objective findings to make a diagnosis.
On September 12,1984, at the request of plaintiff's attorney, Robinson was examined by Dr. Francis Charles McMain, orthopedist. Dr. McMain stated that Robinson complained of knee and back pain and denied having experienced any back or lumbo-sacral pain prior to May 27, 1984. Robinson failed to relate his prior accident history. Dr. McMains’ diagnosis was first degree spondylolisthesis. In his opinion the spondylolisthesis preexisted the alleged May 27, 1984, accident and the accident (as alleged by Robinson) aggravated and precipitated Robinson's symptoms. Robinson was referred by Dr. McMain to another orthopedist for treatment.
Robinson was seen by Dr. Bruce Razza, orthopedist, on October 1, 1984, for low back and left knee pain. Robinson denied having experienced low back pain prior to the alleged May 27, 1984, incident and did not relate the occurrence of any accidents other than that alleged on May 27. Dr. Razza’s diagnosis was symptomatic grade one spondylolisthesis of the lumbo-sacral junction with secondary mechanical low back pain and secondary intermittent radi-culopathy to the lower extremities. In his opinion, the origin of the spondylolisthesis was congenital, not caused by trauma. The chronic left knee pain was related to a possible tear of the lateral meniscus and secondary sentivitis in the knee. On December 4, 1984, Robinson underwent arthroscopic surgery of the knee to repair a parrot beak tear of the lateral meniscus. Shortly thereafter, a lumbar decompression and fusion was performed. Post-operatively, the low back pain recurred when Robinson misstepped at home. Dr. Razza performed a second fusion and inserted an internal brace to further stabilize the back until the bone would incorporate. Dr. Raz-za was under the impression that Robinson had never experienced back pain prior to *1075 May 27, 1984, and that the bleacher incident was the only accident in which Robinson had allegedly been injured. Based on the medical history related to him by Robinson, in Dr. Razza’s opinion, the spondylo-listhesis was asymptomatic until the alleged May 27, 1984, accident and the accident as related by Robinson was consistent with Robinson’s condition becoming symptomatic.
On December 3,1984, Robinson was seen by Dr. Neil Baum, urologist, for evaluation of difficulties with urination and impotence. The results of a urodynamic evaluation performed on December 5, 1984, showed no evidence of neurologic involvement of the lower urinary tract. On July 18, 1985, Robinson was again evaluated by Dr. Baum for persistent urinary symptoms and impotence. A urodynamic evaluation revealed bladder sphincter dyssynergia which, in Dr. Baum’s opinion, was attributable to either trauma or the orthopedic surgery which had been performed. Robinson also underwent a nocturnal penile tumescent test in order to differentiate between psychogenic and organic penile dysfunction. The test results indicated that the impotence was not organic.
On cross-examination, Robinson admitted that he had not related to Drs. Razza, McMains or Baum that he had been involved in any accidents other than that which allegedly occurred on May 27, 1984. Also, he did not relate having suffered injuries to his back, neck or shoulders other than the injuries which allegedly were suffered on May 27, 1984. He also admitted that he denied ever having experienced any lumbo-sacral pain prior to the alleged May 27, 1984, incident when questioned by Drs. Razza, McMains, Baum and Shepherd. When asked why he had not been candid in relating his medical history to the physicians, Robinson responded that it “seemed irrelevant because I had never had a low back pain like I have now. I had strains in my shoulders and my back like I have now. I had strains in my shoulders and my back but that’s a strain, that’s not the pain I experienced May the 27th of 1984.”
After a thorough review of the record, we find evidence that would support a jury finding that the alleged May 27, 1984, accident was not the cause of Robinson’s back, knee and urologic problems. The back problem definitely preexisted the accident and the jury was not clearly wrong in finding the May accident did not aggravate the condition. The jury could have concluded from the evidence that Robinson failed to relate any knee problem to Dr. Nelson, the chiropractor who treated him immediately after the May occurrence. Thus, the jury was not clearly wrong in finding this injury did not result from the May accident, especially in view of the subsequent June accident.
Accordingly, the judgment of the trial court is affirmed. In view of our findings the trial court was not in error in refusing a judgment n.o.v. and the jury did not err in failing to assess any damages. Costs are to be paid by plaintiffs.
AFFIRMED.
SHORTESS, J., dissents with reasons.