618 So.2d 971 (1993)
Walter BURDIS, Jr.
v.
LAFOURCHE PARISH POLICE JURY, et al.
No. 92 CA 0652.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Writ Denied June 25, 1993.
*973 Timothy K. Lamy, Barker, Boudreaux, Lamy & Foley, New Orleans, for plaintiff-appellant Walter Burdis, Jr.
Christopher H. Riviere, Pugh, Lanier & Riviere, Thibodaux, for defendant-appellee Lafourche Parish Council.
Before CARTER, LeBLANC and PITCHER, JJ.
PITCHER, Judge.
Plaintiff, Walter Burdis, filed suit against the defendant, Lafourche Parish Council[1] to recover damages for injuries he sustained in a single vehicle accident which occurred when plaintiff failed to negotiate an unmarked curve on Parish Road No. 17 (hereinafter referred to as Dixie Plantation Road) and drove off of the road and into a ditch. The trial court found that the defendant owed no statutory or jurisprudential duty to sign the curve or the road. The trial court further concluded that the sole cause of this accident was plaintiff's negligence. Plaintiff now appeals these rulings.

FACTS
On August 21, 1986, at approximately 2:00 a.m., plaintiff met Bernard Cedotal at B.J.'s Lounge and consumed one to one and one-half cans of beer. They left the lounge to go to Mr. Cedotal's house, located at the end of Dixie Plantation Road. Plaintiff testified that he had never before been *974 down Dixie Plantation Road. Plaintiff, on his motorcycle, was following Mr. Cedotal on La. 308 when he saw Mr. Cedotal stop. Plaintiff stated that he had seen the sign for Dixie Plantation Road so he turned down the road and went ahead of Mr. Cedotal. Plaintiff testified that he was travelling between forty-five and fifty miles per hour. About one mile down the road, plaintiff stated he suddenly realized that the road ended. However, he saw a light down the road which he said made it appear the road would continue. Plaintiff suddenly drove off the left side of the roadway striking the adjacent ditch and a metal building. Plaintiff testified that there were some patches of fog at the time of the accident, and the light he had seen was not located near the place of the accident.
Dixie Plantation Road is a blacktop road which intersects La. Highway 308. This road continues from La. Hwy. 308 for approximately one mile, then it curves to the right, goes a short distance, and then curves to the left. Because there is no posted speed limit on this road, the speed limit is fifty-five miles per hour. There are no curve warning signs, speed advisory signs, chevrons, or striping on the road. There are two lights located near the scene of the accident. One light, located on a pole near the entrance of the curve, was not working on the night of the accident. The other light is located on a pole in the cane field surrounding the road.
Trooper Bruce Gagnard investigated the accident and confirmed that there were no markings or signs. He estimated that plaintiff was travelling fifty miles per hour. Trooper Gagnard also found that plaintiff first hit the ditch embankment and ultimately landed at, or near, the metal building, one hundred and seventy-two feet away. The trooper testified that he had noted in his report that plaintiff had been drinking but not enough to warrant administering a blood alcohol test. Trooper Gagnard further stated that the diagram on his report showed that plaintiff had travelled in a straight line. He also noted that it was a clear night.
After the accident, plaintiff was admitted to the hospital where he subsequently underwent surgery to repair a fracture of the tibia and the fib La. At the time of trial, this injury had not properly healed and required additional surgery.
On June 16, 1987, plaintiff filed suit seeking damages for his injuries, alleging that the parish was negligent in failing to properly sign the road, and curve, in question.[2] The trial in this matter began on December 12, 1991. Evidence was presented over a two day period, and on December 17, 1991, the trial court dismissed plaintiff's suit.
In his oral reasons for judgment, the trial court concluded that there was no statutory duty imposed on the Lafourche Parish Council to sign the curve or the road in question. The trial court also found that the evidence had failed to establish that this was a dangerous curve. It was further noted by the court that since the parish government had no actual or constructive notice of any alleged hazardous condition, the parish did not breach any jurisprudential duty it may have had to plaintiff or to the travelling public.
Ultimately, the trial court concluded that the sole cause of the accident was plaintiff's inattention and lack of reasonable care.
Plaintiff appeals this judgment, alleging the trial court committed the following errors:
1.
The Court committed reversible error by concluding that there is no statutory duty imposed on LaFourche [sic] Parish to sign and mark the curve on Parish Road No. 17.

*975 2.
The Court erred in concluding that La-Fourche [sic] Parish did not breach any jurisprudential duty to the motoring public.
3.
The Court erroneously concluded that the sole cause of this accident was the inattention and the lack of reasonable care on the part of Walter Burdis.

LIABILITY
Plaintiff sought to recover on the basis of the parish's negligence in failing to properly sign the road, and curve, in question. In order to recover on a negligence theory, plaintiff must affirmatively prove:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk and harm caused within the scope of protection afforded by the duty breached?
Mart v. Hill, 505 So.2d 1120, 1122 (La. 1987).
CAUSE-IN-FACT
Cause-in-fact is usually a "but for" inquiry which tests whether the injuries would not have occurred but for the defendant's substandard conduct or if the conduct is a substantial factor in bringing about the injuries. Fowler v. Roberts, 556 So.2d 1, 5 (La.1989); Robinson v. Pearah, 525 So.2d 1071, 1072 (La.App. 1st Cir.1988).
It is clear that the parish's failure to provide adequate warnings, such as a curve sign or an advisory speed plate, was a cause-in-fact of the accident and resulting injuries of the plaintiff. The accident would not have happened but for the failure to warn. The presumption is that, despite plaintiff's inattention, he would have probably heeded any warning signs and slowed down to negotiate the curve. Adequate warnings would more likely than not have prevented this accident; conversely, the total lack of any warning signs whatsoever was a cause-in-fact of this accident. Ledbetter v. State, Louisiana Department of Transportation and Development, 502 So.2d 1383, 1388 (La.1987).
Thus, the defendant's conduct complained of was the cause-in-fact of the accident and resulting injuries.[3]
DUTY
In order to recover, plaintiff must establish a duty on the part of the defendant. Duty is a question of law and the inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support his claim. Faucheaux v. Terrebonne Consolidated Government, et al., 615 So.2d 289, 292 (La.1993).
Under LSA-R.S. 32:235(B), the parish is responsible for placing and maintaining traffic signs and controls within its jurisdiction. Because of this responsibility, the parish has the legal duty to erect warning signs sufficient to warn motorists of hazardous conditions. Veazey v. Parish of Avoyelles, 476 So.2d 1057, 1058 (La.App. 3rd Cir.), writs denied, 478 So.2d 1236, 478 So.2d 1238 (La.1985); Langer v. Bienville Parish Police Jury, 541 So.2d 360, 362 (La.App. 2nd Cir.), writ denied, 546 So.2d 177 (La.1989).
In the instant case, the trial court first found that there was no statutory duty imposed on the parish to sign the curve or the road in question. In its reasons for judgment, the trial court looked to the language in LSA-R.S. 32:235 B, which provides, in pertinent part:
Local municipal and parish authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary.... (Emphasis Added).
*976 The trial court interpreted this phrase to mean that if the parish governing authority had some logical and reasonable basis for determining whether to place or maintain traffic control devices on any highway under their jurisdiction, this language would permit the parish to so chose. The court then referred to the testimony of Duaine Evans, a traffic engineer called by the plaintiff. The court focused on Mr. Evans' testimony regarding the Louisiana Manual on Uniform Traffic Control Devices and more particularly, the section of the manual which provided the following:
The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this manual provides standards for design and application of traffic control devices, the manual is not a substitute for engineering judgment. It is the intent that the provisions of this manual be standards for traffic control devices installation but not a legal requirement for installation.
Robert Simons, director of the Department of Public Works for the Lafourche Parish Council at the time this accident occurred, testified that his department did not attempt to comply with the standards set forth in the manual because of budgetary reasons. Apparently, the trial court concluded that the parish was relieved of its duty to place and maintain traffic control devices because they could not afford to pay for them. However, evidence was introduced at trial which indicated that from 1981 through 1990, the Lafourche Parish Council received over $5,900,000.00 from the Parish Transportation Fund. This fund was established by the state and is dedicated to the construction and maintenance of parish road systems. See LSA-R.S. 48:751 et seq. Mr. Simons apparently was unaware of these monies.
The trial court also determined that the evidence failed to establish that this was a dangerous curve. In concluding that this was not a dangerous curve, the trial court relied on the testimony of an expert witness who testified in the case of Efferson v. State Through Department of Transportation & Development, 463 So.2d 1342, 1348 (La.App. 1st Cir.1984), writs denied, 465 So.2d 722 (La.1985). The expert in that case did not testify in the instant one.
A finder of fact cannot consider evidence outside the record in making its findings. Determinations of fault must be based on the evidence in the record. Savoie v. Deere & Company, 528 So.2d 724, 728 (La.App. 1st Cir.), writ denied, 532 So.2d 177 (La.1988); Brown v. Rudy Smith Service, Inc., 441 So.2d 409, 413 (La.App. 4th Cir.1983). The resolution of material issues of disputed fact by judicial notice is improper. Savoie v. Deere & Company, 528 So.2d at p. 728.
Mr. Evans, the only expert to testify at trial, conducted an engineering survey of the accident scene. Measurements indicated that Dixie Plantation Road contained a twelve degree curve which was described as a significant curve. Mr. Evans also testified that the fifteen and one-half foot width of the roadway and the very narrow shoulders were considered below standard. Mr. Evans conducted a ball bank study which indicated that the curve could be safely negotiated at a speed of thirty miles per hour. Citing the Louisiana Manual on Uniform Traffic Control Devices, Mr. Evans concluded that since the speed limit on this road was fifty-five miles per hour, a curve warning sign and a thirty miles per hour advisory speed sign should be posted prior to the curve. Mr. Evans' uncontradicted testimony was that the curve posed a hazard to motorists as it existed, and he concluded that the curve was not safe without the suggested warning signs. For these reasons, the trial court was clearly wrong in holding that the curve was not dangerous.
In order for a violation of a public agency's duty to warn a motorist of any dangerous conditions to constitute negligence, it must be shown that the public agency had knowledge, actual or constructive, of the danger and that it failed to correct the danger or warn motorists of the danger. McCoy v. Franklin Parish Police Jury, 414 So.2d 1369, 1372 (La.App. 2nd Cir.1982). In the instant case, the trial *977 court found that the parish government had no actual or constructive knowledge of any alleged hazardous condition because no evidence of any prior accidents at this curve had been presented.
A public body charged with maintaining a public route cannot claim lack of knowledge of the need to provide warnings where the danger is obvious and inherent in the design and construction of the facility. A public body is held to know of the danger of an unmarked intersection, a sharp curve, or a draw bridge. Furthermore, the public authority must provide adequate warnings of unusual obstruction or perilous conditions so as to make the route reasonably safe for those traveling on it. Faucheaux v. Terrebonne Consolidated Government, et al., 615 So.2d 289, 293.
Although no prior accidents were established by the evidence, the danger presented by this curve, particularly in the dark or semi-darkness, is apparent. The curve may be apparent during the day and to someone who has traveled the road before. However, it presents a danger to one who is unfamiliar with the road or who is inattentive. The governmental authority owes a duty to an inattentive traveler as well as to an attentive one. Molbert v. Toepfer, 550 So.2d 183, 186 (La.1989).
As constructed, the curve, absent warnings, presented an unreasonable risk of injury to persons traveling on the road, particularly to those who were not familiar with the road or who were driving in the dark. A person who did not know that the curve existed would have no reason to direct attention to the curve. The need for the warning signs and the duty of the parish to provide them is apparent.
BREACH OF DUTY
The parish failed to install and maintain any warning devices at the curve in question. Therefore, it breached its duty to motorists driving on Dixie Plantation Road.
SCOPE OF DUTY
Rules of conduct are designed to protect some persons under some circumstances against some risks. Gresham v. Davenport, 537 So.2d 1144, 1147 (La.1989). In determining the limitation to be placed on liability for the defendant's substandard conduct, the proper inquiry is how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Hill v. Lundin & Associates, Inc., 256 So.2d 620, 622 (La.1972).
The duty to warn of the danger presented by this curve clearly encompassed the risk that a driver, especially an inattentive one, would not see the curve if travelling in the dark. This duty to warn also encompassed the risk that a driver would not reduce his speed to safely negotiate the curve unless warned to do so.
Because all four of the questions set forth in Mart v. Hill, 505 So.2d at 1122, were answered in the affirmative, the parish is liable to plaintiff for its negligence which resulted in the injuries to plaintiff.

COMPARATIVE NEGLIGENCE
Comparative fault requires the allocation of the percentage of fault attributable to plaintiff and defendant. Since the entire record is before us, we need not remand this case to the trial court, but may make this allocation ourselves. Gonzales v. Xerox Corporation, 320 So.2d 163, 165 (La.1975).
The Louisiana Supreme Court in Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), set forth five factors to be considered in apportioning fault:
(1) Whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) the extent of the risk created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior; and
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
*978 In the instant case, plaintiff's conduct in failing to negotiate the curve was largely a result of inadvertence. Due in large part to the lack of warning signs, plaintiff was unaware of the danger presented by the particular road hazard. Plaintiff had never travelled this road before.
The trial court found that plaintiff's inattentiveness and lack of reasonable care was the sole cause of this accident. We disagree. There was evidence presented which indicated that plaintiff had consumed some beer before this accident occurred. However, Trooper Gagnard testified that a blood alcohol test was not warranted in this situation. No witness testified that plaintiff's senses appeared so impaired that he was unable to function. At most, this alcohol consumption might have been a slight factor in plaintiff's failure to see and negotiate the curve. A governing authority has a duty to sign and mark roadways to alert unwary drivers to unusually perilous hazards. Adamson v. City of Lafayette, 521 So.2d 1258, 1261-62 (La. App. 3rd Cir.), writ denied, 526 So.2d 798 (La.1988). Also, there is a presumption that had the appropriate signs been in place to warn plaintiff, he would have obeyed them. 521 So.2d at 1261.
On the other hand, the parish's negligence involved an awareness of the danger, a substantial risk was created by the failure to provide warnings of the presence of the curve, and the risk could have been easily and inexpensively avoided by the furnishing of warnings.
Considering the Watson factors, we find that defendant was 90% at fault and plaintiff was 10% at fault.

QUANTUM
Because the trial court found no liability on the part of the parish, it did not reach the question of damages. Since the full record is before us, we now turn to the consideration of this question. See Gonzales v. Xerox, 320 So.2d at 165.
At the time of the accident, plaintiff was twenty-five years old. As a result of this accident, he suffered injuries to his left leg. Immediately after the accident, plaintiff was transported to Thibodaux General Hospital and was later transferred to South Louisiana Medical Center. The medical records show that plaintiff suffered a fracture of the tibia and fibula and that he had closed reduction on August 21, 1986. He had several casts applied until March of 1987. The records also indicate that in August of 1987, plaintiff had some pain and swelling. Although x-rays showed some demineralization, the fracture had healed.
Dr. Pete Rhymes testified that he examined plaintiff in September of 1989, almost three years after the accident. Dr. Rhymes testified that plaintiff reported pain in his left leg. Subsequent tests revealed that the leg had not properly healed, and Dr. Rhymes recommended surgery. He stated that if the surgery was successful, plaintiff could resume all normal activity and although there would be some shortening of the leg, there would be no functional disability.
Dr. Rhymes stated that his total fee for performing this surgery, including follow-up, would be between seven and eight thousand dollars. Dr. Rhymes "estimated" that the hospital bill from Terrebonne General Hospital would be approximately ten thousand dollars. Plaintiff also introduced evidence which showed that he had incurred $2,780.95 in medical expenses.
Therefore, we find that an award of $50,000 in general damages and $20,000 for past and future medical expenses is appropriate in this case.
Plaintiff was working as a manual laborer and earning $5 per hour at the time of the accident. Although the petition alleged loss of earnings and loss of earning capacity, plaintiff apparently will suffer no permanent disability as a result of his injuries if he has the surgery recommended by Dr. Rhymes. The only evidence offered as to loss of earnings was the testimony of the plaintiff and his tax returns for 1986. These tax returns indicated that he had an earning potential of approximately $12,000 per year. He worked for one and one-half *979 years earning this amount. Plaintiff also did mechanic work throughout the years since the accident, earning approximately $5000.00 a year. Plaintiff estimated that he was entitled to $7,000 per year for 3½ years. Defendants offered no evidence to disprove these facts. Therefore, we award plaintiff $24,500.00 in lost earnings.

CONCLUSION
For the reasons assigned, the judgment of the trial court is reversed, and the judgment is hereby rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, WALTER BURDIS, JR., and against defendant, LAFOURCHE PARISH COUNCIL, in the sum of $85,050 (representing his total damages of $94,500 reduced by plaintiff's comparative fault), together with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of trial and appeal be allocated 90% to Lafourche Parish Council and 10% to plaintiff.
REVERSED AND RENDERED.
LeBlanc, J., concurs in part and dissents in part and assigns reasons.
LeBLANC, Judge, dissenting in part.
I agree with the finding of a breach of the duty on the part of the parish for failing to sign the roadway involved in the instant case. In addition, I agree with the amount of damages awarded to the plaintiff for his injuries. However, I dissent from that portion of the majority opinion concerning the allocation of the percentage of fault attributable to plaintiff and defendant.
The plaintiff was driving his motorcycle, at night, after consuming some amount of alcohol. He was travelling on a roadway he had never travelled before. He voluntarily took the lead to his companion's home, a location he had never visited before. He failed to see what he should have seen.
A driver's fundamental duty is to maintain a proper lookout. This duty does not diminish because it is nighttime, or because he is on an unfamiliar roadway. I would apportion fault at 50% to plaintiff and 50% to defendant.
NOTES
[1] Plaintiff's original petition named Lafourche Parish Police Jury as defendant. The petition was later amended to change the name "Lafourche Parish Police Jury" to "Lafourche Parish Council", and Lafourche Parish Council was substituted as the proper party defendant in this case.
[2] Louisiana Power and Light Company (LP & L) was a named defendant in this petition. LP & L filed a peremptory exception raising the objection of no cause of action, asserting that neither the parish nor LP & L had a duty to light the roadway in question; thus, there could be no cause of action based on negligence. The trial court maintained the exception dismissing plaintiff's suit against LP & L. This court affirmed the trial court's judgment in Burdis v. Lafourche Parish Police Jury, 542 So.2d 117 (La. App. 1st Cir.1989)
[3] The trial court found that plaintiff's inattention and lack of reasonable care was the sole cause of this accident. Because the trial court had already found no liability before it made this finding, we disregard the trial court's ruling. James v. Town of Roseland, 610 So.2d 1011, 1013 (La.App. 1st Cir.1992).