|2CARTER, Judge.
This is an appeal from a trial court judgment in an action for damages.

*1351
FACTS

On January 20,1990, William J. Duffy, III, a student at Nicholls State University in Thibodaux, Louisiana, was riding Ms bicycle in an easterly direction on Ardoyne Drive toward its intersection with Louisiana Highway 648. At this intersection, the traffic on Ardoyne Drive is controlled by a stop sign and two red, flashing lights. The traffic on Louisiana Highway 648 is controlled by yellow no passing zones and yellow, flasMng lights.
It had just rained, and the streets were wet. As Duffy proceeded through the intersection of Ardoyne Drive and Louisiana Highway 648, he was struck by a veMcle traveling south on Louisiana Highway 648. As a result of the collision, Duffy sustained serious injuries.
On December 21, 1990, Duffy filed a petition for damages arising out of the January 20, 1990, accident. Named as defendants in the action were: the State of Louisiana, through the Department of Transportation and Development (DOTD); Troy Fields, the driver of the veMcle which struck Duffy; Lillian Nickell, owner of the veMcle which struck Duffy; and State Farm Insurance Company (State Farm), liability insurer of Nickell. In answering Duffy’s petition, DOTD alleged that Duffy’s negligence was the sole cause of the accident.
On January 29, 1991, Blue Cross/Blue Shield of Louisiana (Blue Cross) filed a petition for intervention, alleging that, on the date of the accident, Duffy was covered under a policy of insurance issued to his mother and that Blue Cross had paid $48,570.15 in medical payments on behalf of Duffy and continued to make payments. Blue Cross alleged that it was subrogated to Duffy’s rights against all defendants to the extent of all payments made or to be made on Ms behalf.
On June 30, 1992, Duffy, State Farm and Fields, and Blue Cross filed a joint motion and order for dismissal. In the order, the parties set forth that the matter ^between them had been fully compromised and settled and that they desired to dismiss with prejudice all claims, with Duffy reserving any and all rights against DOTD. On July 1, 1992, the trial judge signed the order, dismissing the parties with prejudice and reserving Duffy’s rights against DOTD.
On March 6, 1995, trial on the merits was held.[2] On March 20, 1995, the trial court rendered judgment in favor of DOTD and against Duffy, finding that the accident occurred as a result of Duffy’s sole negligence. On April 5, 1995, the trial court signed a judgment, dismissing Duffy’s demands against DOTD at his costs.
On April 25, 1995, Duffy and Blue Cross appealed the trial court judgment, assigning the following specifications of error:
(1) The judge’s conclusion that the accident was caused by the sole negligence of the cyclist is manifestly erroneous, because the judge failed to consider the overwhelming factual evidence that the State’s lack of maintenance was the proximate cause of the accident.
(2) The Court failed to apportion fault and damages caused by the State’s negligence and breach of its duty. Under Louisiana Code of Civil Procedure Article 2164, we ask this Honorable Court to render a judgment which is just, legal, and proper upon the record.

LIABILITY OF DOTD

Duffy and Blue Cross contend that the trial court erred in finding that Duffy’s negligence was the sole cause of the accident. Duffy and Blue Cross reason that the trial court failed to consider certain factual evidence regarding DOTD’s lack of maintenance, which Duffy and Blue Cross allege was the proximate cause of the accident.
In order to determine whether liability exists under the facts of a particular case, *1352 the courts have adopted the duty-risk analysis. Under this analysis, a plaintiff must prove that:
1) the conduct in question was the cause-in-faet of the resulting harm;
2) the defendant owed a duty of care to plaintiff;
|⅜3) the requisite duty was breached by the defendant; and
4) the risk of harm was within the scope of protection afforded by the duty breached.
Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993); Faucheaux v. Terrebonne Parish Consolidated Government, 615 So.2d 289, 292 (La.1993); Mart v. Hill, 505 So.2d 1120, 1122 (La.1987); Burdis v. Lafourche Parish Police Jury, 618 So.2d 971, 975 (La.App. 1st Cir.), writ denied, 620 So.2d 843 (La.1993).
The first inquiry is whether the conduct in question is a eause-in-fact of the harm which occurred. Cause-in-fact is usually a “but for” inquiry which tests whether the injuries would not have occurred but for the defendant’s substandard conduct or if the conduct is a substantial factor in bringing about the injuries. Cay v. State, Department of Transportation and Development, 93-0887 p. 5 (La. 1/14/94); 631 So.2d 393, 395; Fowler v. Roberts, 556 So.2d 1, 5 (La.1989); Burdis v. Lafourche Parish Police Jury, 618 So.2d at 975; Robinson v. Pearah, 525 So.2d 1071, 1072 (La.App. 1st Cir.1988). A cause-in-fact determination is one of fact on which appellate courts must accord great deference to the trial court. Cay v. State, Department of Transportation and Development, 631 So.2d at 398; Bohmfalk v. City of New Orleans, 628 So.2d 1143, 1147 (La.App. 4th Cir.1993), writ denied, 93-3140 (La.2/11/94); 634 So.2d 376. See Rick v. State, Department of Transportation and Development, 93-1776 p. 8 (La.1/14/94); 630 So.2d 1271, 1275. In Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993), the Louisiana Supreme Court enunciated a two-part test for the reversal of a factfinder’s determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must preview the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Sto-bart v. State, Department of Transportation and Development, 617 So.2d at 882. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
In the instant case, the trial judge concluded that Duffy’s negligence was the sole cause of the accident. In his written reasons for judgment, the trial judge stated:
[T]his accident occurred due to the sole negligence of the plaintiff, in riding a bicycle on an unfamiliar street, approaching an unfamiliar intersection at which he saw a flashing light, in a misting rain, with his head down and his eyes upon the roadway, without making any attempt to insure that his way was clear. Even if the flashing light were yellow, plaintiff had the obligation to proceed with caution. This he did not do.
Implicit in this finding is a factual determination that, but for the alleged negligence of DOTD, the accident would have occurred anyway. Therefore, before we can reverse this factual finding, we must examine the record to determine whether a reasonable factual basis does not exist for the finding of the trial court and whether the finding is clearly wrong.
In the instant case, the evidence presented at trial on the issue of causation consisted of the testimony of Duffy, James R. Clary, Sr., Pat Olivier, Alisha Weimer, Cindy Weimer, and Deborah Beck.
*1353 William J. Duffy, III, testified that he began living in Thibodaux in 1986 when he enrolled in Nicholls State University and that he had lived in California prior to that time. Duffy indicated that, on January 20,1990, he was riding his bicycle to visit his girlfriend who lives in Country Club Subdivision. Duffy described the weather as “rather ... [inclement] at some points ... spotty showers and overcast” and stated that there was limited visibility and a light spray in the air. According to Duffy, he was more cautious than usual because of the weather conditions and because the road was substandard, having ruts and no shoulder.
leDuffy testified that, prior to reaching the intersection of Ardoyne Drive and Louisiana Highway 648, he had stopped at four different intersections on the Nicholls campus. At the last intersection at which he stopped, Duffy noticed the flashing light at the intersection of Ardoyne Drive and Louisiana Highway 648, which was approximately one-half mile ahead. Duffy described the light as being a single, flashing light having a yellow color. Duffy indicated that he did not notice a “stop ahead” or a stop sign. Duffy testified that he did not stop at the intersection of Ardoyne Drive and Louisiana Highway 648 because he saw a single, flashing, yellow light, not a flashing, red light. According to Duffy, he would have stopped had the flashing light been red. Duffy acknowledged that the flashing light indicated that he was approaching an intersection and that a yellow, flashing light indicates that one must proceed with caution.
Duffy testified that he was looking down at the road, which he described as being substandard. He indicated that he was proceeding cautiously so as not to fall into a rut or go off the edge of the road and to make sure that there was nothing impeding his path. Duffy stated that he did not see the stop sign and opined that the reason he did not see it was because his attention was drawn to the flashing, yellow light. Duffy stated that there was nothing obstructing his view or to prevent him from hearing the traffic. Duffy indicated that he had never approached Louisiana Highway 648 from Ardoyne Drive.
James R. Clary, Sr., a consulting engineer, testified as an expert in highway design, highway safety, highway maintenance, highway signing, and highway engineering. According to Clary, on June 21, 1994, he inspected the intersection of Ardoyne Drive and Louisiana Highway 648 and found that both lens on the face of the signal controlling Ardoyne Drive were operating, but one of them had holes in it. Clary described the lens with holes in it as leaking white light, which was very dim and not red. Clary stated that it was “more whitish looking than red.” Clary indicated that he understood that one of the flashing lights was not operating on the day of the accident and that the other flashing light had a broken lens, causing it to leak white light, ^diminishing the red appearance. In viewing the light on the video tape, Clary found that it appeared to be “very faded white light that could easily ... [be] mistaken for a not red.”
Clary explained that there are two flashing lights so that, if one of the lights burns out, there will be another light to guide traffic. Clary testified that the life of a bulb is approximately one year, but opined that a bulb could last several years. Clary testified that, once a traffic control device has been placed, DOTD must maintain it and keep it in proper working order in accordance with maintenance standards. Clary testified that, according to DOTD’s Maintenance Standards Manual, traffic lights should be inspected at least every two weeks, as well as an annual inspection, totaling at least twenty-seven inspections per year.
Clary also determined that the stop sign controlling Ardoyne Drive was not properly placed. Clary indicated that the stop sign was lower than required by the uniform standards, but he felt that a bicyclist approaching the intersection should have been able to see the sign. Clary indicated that there are no intersections which have flashing, red lights without stop signs.
*1354 Clary’s inspection also revealed that there was no “stop ahead” sign, which was required, according to DOTD correspondence.[3] Clary explained that “stop ahead” signs are needed to warn of a hazard ahead (the hazard ahead being the stop sign and the stop) or if there is a vision obscurement at the place where the stop is to be made. Clary acknowledged that there were no vision ob-scurements between Duffy and the stop sign.
According to Clary, the condition of the lights on the day of the accident, the stop sign being too low, and the absence of a “stop ahead” sign caused problems for Duffy. Clary indicated that these conditions would confuse a person at the intersection.
Clary opined that DOTD’s maintenance prior to the accident was inadequate. Clary based this opinion on the deposition testimony of Alfred J. Martin, Jr., signal 18electrician with DOTD.[4] In reviewing Martin’s deposition testimony, Clary found that Martin had no specific training, was unfamiliar with the maintenance manual, and was unfamiliar with the requirement that inspections were to be made at various intervals. Clary indicated that Martin’s testimony revealed that he was told what to do and when to do it, had no set route, and would ride around and check signals when he was not called to do anything specific. Clary indicated that Martin was unaware of bulb life and had no record of any inspections or service calls at the intersection of Ardoyne Drive and Louisiana Highway 648 between 1979 and February 2, 1989, at which time he repaired a wire in the light.[5]
Pat Olivier, a trooper with the Louisiana State Police, testified that he investigated the accident involving Duffy, but that he vaguely recalls the details. After reviewing the accident report, Olivier indicated that, when he arrived at the accident scene, Duffy was about to be transported to the hospital and was unable to speak with Olivier until later during the day. However, immediately after the accident, Olivier spoke with the driver and the passenger of the Fields vehicle (the vehicle which struck Duffy). Olivier also spoke with Alisha and Cindy Weimer, the driver and passenger of the vehicle traveling immediately behind the Fields vehicle.
Olivier described the intersection as a four-way intersection. The vehicles on Ardoyne Drive are controlled by a stop sign and a set of double, flashing, red lights. The vehicles on Louisiana Highway 648 are controlled by yellow no passing zones, as well as yellow, flashing lights. Olivier noted no vision ob-scurements. According to Olivier, on the date of the accident, the traffic signals controlling Ardoyne Drive were operational and did not have any holes in the lens. Olivier indicated that, if he would have observed any damaged or malfunctioning lights, he would have made note of it in his report and would have reported it to DOTD for the necessary repairs.
|9On cross-examination, Olivier acknowledged that he had no independent recollection of the accident and surrounding events. However, Olivier indicated that he does not think he could have missed a defective traffic signal on the day of the accident.
Alisha Weimer testified that she was driving the vehicle behind the Fields vehicle, which collided with Duffy. Ms. Weimer indicated that she saw Duffy, on his bicycle, approaching the intersection and that Duffy was riding “fairly fast.” Ms. Weimer stated that she recalled that Duffy’s “head was down” and that he was “[n]ot looking” at the intersection ahead of him. Ms. Weimer explained that, by saying Duffy’s head was down, she meant that he “was looking toward the ground or toward the handlebars, whichever, but his head was down.” After the accident, Ms. Weimer noticed a stop sign facing the traffic on Ardoyne Drive. Ms. Weimer stated that there was nothing to obscure her vision of Duffy, noting that there *1355 was a sugarcane field to her left, but the sugarcane had been cut. On cross-examination, Ms. Weimer acknowledged that, when one rides a racing bicycle, one leans over with his head down and that Duffy was in this position, with his head down.
Cindy Weimer testified that she was a passenger in her mother’s car. Ms. Weimer indicated that her vision was not obscured, that she saw Duffy approaching the intersection, and that she expected him to stop. Ms. Weimer stated that Duffy did not stop, but continued to travel through the intersection and was struck by the Fields vehicle, which was traveling immediately ahead of her and her mother. Ms. Weimer testified that she watched Duffy the entire time and that he kept his head down the entire time. Ms. Weimer could not see Duffy’s eyes and could see only the side of his head. On cross-examination, Ms. Weimer acknowledged that she never saw Duffy’s eyes, so she could not say where he was looking.
Deborah Beck testified as a rebuttal witness. Beck indicated that she is Duffy’s mother and that she arrived in Thibodaux after the accident on the evening of January |iq20, 1990. Several days later, Beck visited the accident scene and noticed that the red lens cover-over the yellow flashing light controlling Ardoyne Drive had been shattered.
After reviewing the entire record in this matter, we find that there is a reasonable factual basis for the trial court’s factual finding that the accident was caused by the sole negligence of Duffy. The evidence established that Duffy was unfamiliar with the street and the intersection. The intersection was controlled by a flashing light or fights and a stop sign for Ardoyne Drive. Duffy saw the flashing lights ahead of him, but did not proceed through the intersection cautiously. Rather, he rode his bicycle with his head down and his eyes upon the roadway. Based upon this evidence, the trial judge determined that Duffy’s negligence was the sole cause of the accident. We cannot say that this factual determination is manifestly erroneous.

CONCLUSION

For the above reasons, the judgment of the trial court is affirmed. Duffy is casts with all costs.
AFFIRMED.

. Although the order of dismissal dismissed all claims by the parties, except Duffy's claims against DOTD, when the matter proceeded to trial, the intervenor, Blue Cross, pursued its intervention claim against DOTD.

. No such correspondence was introduced into evidence.

. Martin’s deposition was filed into evidence and considered by the trial court.

.Nearly nine months after the accident, Martin received one call in 1990, which was on October 9, 1990.