546 So.2d 936 (1989)
Sarah B. SNOKE, Plaintiff-Appellant,
v.
M & M DODGE, INC. and Chrysler Corporation, Defendants-Appellees.
No. 88-313.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
*937 Pharis & Pharis, Fred Pharis, Alexandria, for plaintiff-appellant.
Harld Van Dyke, Gold, Weems, Robert Nida, Alexandria, for defendants-appellees.
Before GUIDRY, FORET and DOUCET, JJ.
DOUCET, Judge.
This is a redhibition suit. Plaintiff appeals from the judgment of the trial court granting a reduction in price but denying recision of the sale.
FACTS
Plaintiff purchased a new 1986 Plymouth Turismo automobile from M & M Dodge, Inc. (M & M) on May 19, 1986. The front-wheel drive vehicle was manufactured by Chrysler Motors Corporation (Chrysler). *938 The purchase of the vehicle was financed by Guaranty Bank & Trust Company of Alexandria, Louisiana (now Hibernia National Bank).
Prior to the sale of the vehicle, M & M was aware of problems with its air conditioning system and on two occasions, February 26, 1986 and May 7, 1986, M & M added refrigerant to the system and tested it for refrigerant leaks, but could detect none. Plaintiff was not advised of these problems with the vehicle prior to the sale.
Plaintiff first noticed the air conditioning system was not cooling properly on May 21, 1986. She brought the car to M & M for repairs on May 22, 1986. M & M charged the system with refrigerant and checked it for leaks but could find none. Plaintiff continued to experience cooling problems with the air conditioning system and brought the car to M & M for those problems on May 27, 1986, and June 2, 5, 9, 20, and 23, 1986. Through the course of these repair visits, M & M replaced various gaskets and hoses in the air conditioning system, charged the system with refrigerant and tested it for leaks, and repaired or replaced various valves and the compressor. The air conditioning system was finally repaired satisfactorily on June 23, 1986 and plaintiff never experienced any serious air conditioning problems after that date. All repairs to the air conditioning system were made without any expense to plaintiff. Plaintiff stated that on each repair visit the car was in the shop from two to three hours and that M & M offered her the use of another car for any errands she may have had to run. Additionally, during the May 27, 1986 repair visit, the shifting pattern of the transmission was tested at plaintiff's request and no problems were found.
On July 7, 1986, plaintiff brought the car to M & M with complaints of a hum in the rear end, a leak under the dash, a loose panel in the hatchback, and a loose driver's-side rearview mirror. M & M examined the rear end of the car, added one pint of fluid to it, test drove the car and found it operated normally. M & M also sealed a vent on the passenger side to stop the leak under the dash, replaced a screw to repair the loose panel, and tightened the loose mirror. On this occasion plaintiff's car was out of service from July 7, to July 9, 1986 and M & M provided plaintiff with the use of another car. Plaintiff was not charged for any of these repairs.
On July 25, 1986, plaintiff brought the car to M & M with complaints of a loud humming noise in the transmission. She stated that this was the first time she was able to duplicate the noise for M & M employees. On this occasion the entire transmission was replaced and plaintiff's car was out of service from July 25, to August 7, 1986. M & M provided plaintiff with the use of a car for that period and did not charge her for the repairs. Plaintiff had no further problems with the transmission after this repair visit.
On August 21, 1986, plaintiff brought the car to M & M to repair the carpet on the front passenger side, which was coming loose. The carpet was replaced at no charge to plaintiff and she had no further problems with it.
On August 29, 1986, plaintiff brought the car to M & M and complained that occasionally on acceleration the car had no power. M & M employees were unable to duplicate this problem and plaintiff stated she was unable to duplicate it for them. On that date, M & M adjusted the carburetor and set the timing at no charge to the plaintiff.
On September 3, 1986, plaintiff again brought the car to M & M with complaints of loss of power on acceleration and of the car dying out occasionally. On this occasion, neither M & M employees nor plaintiff were able to duplicate the problem of which plaintiff complained. M & M removed the top of the carburetor and found "trash" in the carburetor. M & M cleaned out the "needle" and the "seat" in the carburetor. On the same date plaintiff also complained of what she described as a "whining" noise in the differential of the car. M & M examined the differential and could detect no problems or unusual noises. Plaintiff was not charged for any of the work done on this date. Also, in connection with *939 plaintiff's complaints of loss of power on acceleration and dying out, a "driveability package" was ordered from Chrysler.[1]
On September 18, 1986, plaintiff returned the car to M & M and the driveability package was installed on the car. Plaintiff also complained that the steering of the car pulled, however M & M employees could detect no problems with the car. Plaintiff was not charged for any of the work done on this date.
On September 22, 1986, plaintiff brought the car to M & M and complained that the air conditioning system was not cooling properly, that the engine "dieseled" (i.e., continued to sputter after it was switched off), and that there was a "whining" noise when changing gears. The cooling problem was remedied by simply plugging in an air conditioner switch that had become disconnected. In connection with the dieseling problem, M & M set the carburetor. The right front strut and bearing were replaced, apparently in connection with the "whining" complaint. Plaintiff was not charged for any of these repairs.
Plaintiff was involved in an accident on September 23, 1986 when she drove the car into a ditch and hit an embankment. This accident damaged the front end of the car. To repair this damage, M & M had to pull parts of the front end back into place and align the front wheels. Plaintiff was charged for these repairs.
On October 16, 1986, plaintiff brought the car to M & M and complained that the passenger side door seal leaked, that when the headlights were switched on the clock and radio went off, and that the brakes were noisy. All of these problems were repaired at no cost to plaintiff.
Plaintiff testified that on February 19, 1987, the car lost power on acceleration and died out and that it took 15 minutes to get the car started again. Plaintiff testified that her nephew drove the car later that day and could not duplicate the problem. Plaintiff stated that the car died out two more times that day and that it took five minutes to start it the first time, and three or four minutes the second time. Plaintiff testified that she then took the car to M & M and told them she refused to take the car back, and then left.
On February 20, 1987, M & M drove the car to a service bay in order to examine and repair it. After the car was put in the service bay it could not be started. Bill Doolittle, the service manager at M & M, testified that the spark computer of the car was found to be defective and it was replaced at no cost to plaintiff. The car was then examined and "trash" was found in the carburetor once again. Mr. Doolittle stated that such "trash" was the result of using contaminated gasoline in the car. Other problems with the carburetor were also discovered which made it necessary to rebuild the carburetor. Mr. Doolittle stated that authorization from plaintiff to rebuild the carburetor was received by phone. Plaintiff stated that she merely told an M & M employee to "Go ahead and do whatever you want to with it," and that she wasn't going to take the car back. The carburetor was rebuilt on February 20, 1987. That was the last repair made on the car. When plaintiff was notified that the car had been repaired, she refused to go and get it.
Mr. Doolittle stated that since the last repair he had both driven and ridden in the car and that the car had operated normally each time. Mr. G.E. Clark, the service and parts district manager for Chrysler, testified that he had spoken to plaintiff several times concerning her complaints about the car. Mr. Clark was accepted by the trial court as an expert on automobile mechanics. He stated that he had driven the car 20 or 25 miles since the last repair and that he found no problems with the car.
Mr. Clark further stated that he had also driven the car on November 19, 1986 and had not been able to duplicate plaintiff's *940 complaints concerning loss of power and dying out. He stated that he also had detected no problems with the car pulling and no unusual whining noise. He stated that plaintiff at that time admitted that vehicle performance was much better and that the vehicle only pulled on her street.
Plaintiff never drove the car after the last repair and at trial offered no evidence to rebut the testimony of Mr. Doolittle and Mr. Clark that the car now operated normally.
The owner's manual that was taken from the glove compartment of the car and introduced into evidence warns against the use of gasoline blended with ethanol, providing as follows:
"Use of some gasoline blended with ethanol, due to its higher general volatility, may result in starting and driveability deterioration."
At trial plaintiff testified that she always used gasoline blended with ethanol in the car. Both Mr. Doolittle and Mr. Clark testified that the problems caused by the use of gasoline blended with ethanol are very similar to those problems plaintiff complained of regarding loss of power on acceleration and dying out. Mr. Clark also stated that "trash" in the fuel also causes problems similar to those plaintiff complained she experienced.
Plaintiff also testified that her nephew had changed the spark plugs on the car in late October or early November of 1986. Mr. Clark testified that the changing of spark plugs by the nephew could have caused some of the driveability problems plaintiff claims to have experienced. However, plaintiff stated that the car didn't operate any differently after the spark plugs were changed.
Plaintiff filed a redhibitory action against defendants M & M and Chrysler. M & M answered plaintiff's petition with a general denial and filed a third party demand against Chrysler seeking indemnification, attorney's fees, and credit for use. Chrysler answered with a general denial asserting that any defects in the car were attributable to M & M and asking for credit for use.
Trial of all the issues was held on November 4, 1987. Written Reasons for Judgment were handed down on November 5, 1987. Additionally, Amended Reasons for Judgment were handed down on January 4, 1988. Judgment in accordance with these written reasons was signed on January 11, 1988.
The Judgment was in favor of plaintiff and against both defendants, in solido, decreeing a reduction in the purchase price of the car in the amount of $500.00, in favor of plaintiff and against Chrysler in the amount of $1,500.00 for attorney's fees, and in favor of M & M and against Chrysler on the third party demand, indemnifying M & M for the amount of the judgment and awarding M & M $750.00 for attorney's fees.
Plaintiff filed a motion for a new trial and that motion was denied. Plaintiff then appealed the judgment. Neither defendant has answered plaintiff's appeal and neither defendant has appealed. Plaintiff's appeal asserts six specifications of error.
REDHIBITION
LSA-C.C. art. 2520 provides:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
The plaintiff in a redhibitory action must prove by a preponderance of the evidence that the item sold contained a hidden defect before the sale which was not apparent upon ordinary inspection and which rendered the thing unfit for its intended use or so inconvenient and imperfect that the purchaser would not have bought it had he known of the defect. If the vice or defect in the thing made its appearance within three days after the sale, it is presumed to have existed before the sale. In a redhibitory suit, the judge may decree merely a reduction of the price. LSA-C.C. arts. 2520, 2521, 2530, and 2543; Prat v. Heymann, 410 So.2d 343 (La.App. 4th Cir.1982); Cloud v. Huffman Motor *941 Co., Inc., 416 So.2d 266 (La.App. 3rd Cir. 1982).
Multiple defects can collectively form the basis of a redhibitory action even though many of the vices are minor or have been repaired. Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La.App. 1st Cir.1980), writ denied, 391 So.2d 454 (La. 1980).
SPECIFICATIONS OF ERROR NOS. 1, 2, 3, AND 4
By these specifications of error plaintiff asserts that the trial court erred in determining that the "major" problem of the car occasionally losing power on acceleration and dying out had been remedied. Plaintiff asserts that because the trial court made this determination it failed to consider that problem in determining whether or not recision should be granted. Plaintiff further asserts that the trial court erred in refusing to consider "other major and minor problems" in determining whether or not recision of the sale was warranted. Plaintiff asserts that because the trial court failed to consider these problems, it "erred in regard to the applicable legal principles involved" in this case. Plaintiff finally asserts that the trial court erred in failing to grant a recision of the sale.
In its Reasons for Judgment and Amended Reasons for Judgment, the trial court stated that in its opinion the plaintiff was entitled to a reduction in the purchase price rather than a recision of the sale. The court found that the evidence showed that although there had been some problem with the vehicle it was not unsuited for its intended purpose. The court stated that the plaintiff's major complaint was that the vehicle occasionally lost power on acceleration and died out and that this problem had apparently been remedied. The court went on to state that plaintiff was entitled to a reduction in the purchase price because the air conditioner was defective at the time of the sale and this fact was not disclosed to the plaintiff. The court further stated that the "defects" complained of were manufacturing defects, and that M & M was entitled to indemnification and an award of attorney's fees from Chrysler. The court awarded plaintiff $500.00 as a reduction in the purchase price and attorney's fees in the amount of $1,500.00. The court also awarded M & M attorney's fees in the amount of $750.00.
The trial court's determination that the problem of the car losing power on acceleration and dying out had been remedied is a finding of fact. The standard of appellate review of facts as stated by the Louisiana Supreme Court in Canter v. Koehring, 283 So.2d 716 (La.1973) is as follows:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error." At page 724.
Manifest error means clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
In the instant case, Mr. Doolittle testified that he had both driven and ridden in the car since the last repairs were made on February 20, 1987 and that the car operated normally on each occasion and exhibited no problem with loss of power on acceleration or dying out. Mr. Clark, who was accepted by the trial court as an expert in automobile mechanics, testified that since the last repairs he had driven the car 20 to 25 miles and that he detected no problems with the performance of the car. Plaintiff, on the other hand, never drove the car after the last repairs. Also, plaintiff presented no evidence at trial to rebut the testimony of Mr. Doolittle and Mr. Clark. We cannot say that the trial court committed manifest error in finding that this problem had been repaired.
Further, contrary to plaintiff's assertion, the trial court's notation in its Reasons that this problem had been repaired gives no indication that the court failed to consider this problem in determining whether or not recision should be granted. To the contrary, it points to the trial court's consideration of this problem. The trial *942 court could have concluded that the plaintiff simply failed to prove that this problem was the result of a defect that existed at the time of the sale. A review of the record suggests that reasonable minds could reach such a conclusion. The car was purchased by plaintiff on May 19, 1986. Plaintiff did not bring the car to M & M with complaints of this problem until August 29, 1986, over three months later. Further, there were several other possible explanations for this problem of occasional loss of power on acceleration and dying out.
Mr. Doolittle, the service manager at M & M, testified that on two occasions "trash" from contaminated gasoline was found in the carburetor of the car. Both Mr. Doolittle and Mr. Clark, who was accepted by the trial court as an expert, testified that this "trash" could have caused problems such as plaintiff complains she experienced. Also, plaintiff testified that she always used gasoline blended with ethanol in the car. The owner's manual that came with the car warns that such problems can occur with the use of that fuel. Further, both Mr. Doolittle and Mr. Clark testified that the use of that fuel could have caused such problems. Additionally, Mr. Clark testified that such performance problems could have been caused by plaintiff's nephew changing the spark plugs in the car.
We cannot say that the trial court failed to consider the performance problems complained of by plaintiff, nor can we say that if it failed to consider them this would amount to manifest error since it could reasonably have concluded that this problem did not result from a redhibitory defect.
The trial court's reasons also give no indication that it failed to consider "other major and minor problems" in determining whether or not recision of the sale was warranted. Plaintiff considers the air conditioning problem to be a "major" problem. It is obvious from the trial court's reasons that this problem was considered in deciding whether or not recision was warranted. The other problem that plaintiff considers to be major was the transmission.
Plaintiff first demonstrated a problem with the transmission on July 25, 1986. This problem was remedied at that time by replacement of the transmission. Although the car was out of service for this repair from July 25 to August 7, 1986, plaintiff was provided with the use of another car for that period and was not charged for the repairs. Thus, plaintiff experienced little, if any, inconvenience in connection with transmission repairs.
With regard to "minor" problems with the car, in only one instance was the car ever out of service for more than several hours (from July 7 to July 9, 1986) and on that occasion plaintiff was provided with the use of another car. The record indicates that during the times the minor problems were being repaired, plaintiff was offered the use of another car for any errands she may have had to run, although plaintiff seldom, if ever, took advantage of this offer. Thus, these repairs also caused a minimum of inconvenience to plaintiff. This was also true of the repairs to the vehicle necessitated by the performance problems discussed earlier.
In its reasons the trial court plainly indicated that it found that the circumstances of this case did not warrant a recision of the sale and that it was exercising its discretion under LSA-C.C. art. 2543 to "decree merely a reduction of the price." Nothing in the record indicates that the trial court failed to consider any other problem besides the air conditioning problem or that it "erred in regard to applicable legal principles involved." The trial court also stated that the evidence shows that the vehicle was not unsuited for its intended purpose. The trial court apparently concluded that the vehicle did not contain a vice or defect which rendered it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that plaintiff would not have purchased it had she known of the vice. After a thorough review of the record, we cannot say that the trial court was manifestly erroneous *943 or clearly wrong in reaching that conclusion.
For the foregoing reasons we cannot say that the trial court abused its discretion in granting a reduction in price instead of a recision of the sale.
These specifications of error lack merit.
SPECIFICATION OF ERROR NO. 5
By this specification of error, plaintiff asserts that the trial court erred in failing to award "damages, interest, and attorney's fees, including general damages."
The judgment of the trial court awarded to plaintiff legal interest on all sums awarded and also awarded her attorney's fees. Plaintiff's arguments concern damages for the amount she expended in renting a car for three weeks after the last repair to her car on February 20, 1987 and damages for inconvenience and mental anguish.
With regard to damages claimed for car rental, plaintiff failed to prove that it was necessary for her to rent a car for three weeks following the last repair of her car. As previously stated in this opinion, the trial court found that plaintiff's car had been repaired on February 20, 1987 and operated satisfactorily after that date and we cannot say that this finding of fact was manifest error. Thus, plaintiff is not entitled to damages for money she spent on car rental.
With regard to damages claimed for inconvenience and mental anguish, this court in Guillory v. Jim Tatman's Mobile Homes, Inc., 490 So.2d 1185 (La.App. 3rd Cir.1986) interpreted the Supreme Court case of Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980) and held that:
"`Philippe v. Browning Arms Co., supra, in our opinion, is authority for the proposition that the purchaser who sustains damages because he or she purchased a redhibitorily defective product is entitled to be compensated for all provable damages, including inconvenience and mental anguish, if the causation link is established. Philippe, supra, mandates judicial repudiation of the blanket exclusion of damages for inconvenience and mental anguish in redhibition and quanti minoris actions. To knowingly sell a redhibitorily defective product, such knowledge being imputed to a manufacturer, is to do a tortious act. It is well settled that a tortfeasor's victim who sustains mental anguish as a result of the action or inaction of the tortfeasor is entitled to be compensated for it.' Bourne v. Rein Chrysler-Plymouth, Inc., 463 So.2d 1356, at page 1360 (La. App. 1st Cir.1984), writ den., 468 So.2d 570 (La.1985)."
The court in Guillory, supra, went on to uphold the trial court's award of damages for both inconvenience and mental anguish. Accordingly, the award of damages for inconvenience and mental anguish in a redhibition case is proper where competently proved.
In the instant case, as we have previously stated, plaintiff suffered very little inconvenience as a result of the repairs to her car since she was always offered or provided the use of another car while repairs were being made. We cannot say that the trial court committed manifest error in refusing to award damages for inconvenience under the circumstances of this case.
With regard to damages for mental anguish, the only evidence of this was plaintiff's own testimony that she was scared to drive the car because it occasionally died out, sometimes as she accelerated onto a highway. While the trial court did not assign detailed written reasons, he obviously did not believe that plaintiff's own testimony established that she in fact suffered mental anguish as a result of any defect in the car. Factual conclusions of a trier of fact are entitled to great weight and should not be disturbed on review absent manifest error, especially when based on evaluation of credibility of live testimony. Arceneaux v. Domingue, supra. Accordingly, we cannot say that the obvious findings of fact by the lower court that plaintiff proved no compensable inconvenience or mental anguish are manifestly erroneous or clearly wrong.
*944 This specification of error is without merit.
SPECIFICATION OF ERROR NO. 6
By this specification of error plaintiff asserts that the trial court erred in excluding from evidence the employment contract between plaintiff and her attorney, apparently on the grounds of irrelevancy.
Plaintiff proffered to the trial court a contingency fee employment contract between plaintiff and attorney Robert Herrington. Plaintiff was represented at trial and on appeal by attorney Fred A. Pharis. Plaintiff also proffered the testimony of her attorney, Fred A. Pharis, that plaintiff and Mr. Pharis agreed to abide by the proffered contract, even though it was signed by plaintiff and Mr. Herrington, because plaintiff had discharged Mr. Herrington when he had moved to Houston. The proffered contract provided that the attorney would receive 331/3% of the gross amount recovered with court action and 40% of that amount if the case was appealed by any party.
A manufacturer is presumed to know the defects of the thing he manufactures and is therefore in bad faith and liable for reasonable attorney's fees under LSA-C.C. art. 2545. Rey v. Cuccia, 298 So.2d 840 (La.1974). The amount of reasonable attorney's fees to be allowed addresses itself to the discretion of the court. Factors deemed worthy of consideration include the amount involved, the skill of the attorney, and the amount of work necessarily undertaken by the attorney. Ray v. Superior Iron Works and Supply Co., Inc., 284 So.2d 140 (La.App. 3rd Cir.1973), writ denied, 286 So.2d 365 (La.1973). There is ample authority for the rule that a court may rely upon its own expertise to fix the fees of an attorney. Reynolds, Nelson, Theriot & Stahl v. Chatelain, 428 So.2d 829 (La.App. 5th Cir.1983), writ denied, 434 So.2d 1098 (La.1983).
Plaintiff cites LaFleur v. John Deere Company, 491 So.2d 624 (La.1986) and Pillow v. Board of Commissioners, 425 So.2d 1267 (La.App. 2nd Cir.1982), writ denied, 445 So.2d 1225 (La.1984) in support of her assertion that the trial court erred in excluding from evidence a contingency fee contract between her and her attorney. The cases cited by plaintiff merely hold that an award of attorney's fees may be based on the litigant's contingency fee contract where the resulting amount is reasonable. These cases do not hold that a trial court errs by excluding such a contract from evidence.
In the instant case the trial court properly relied on its own expertise to fix attorney's fees. We cannot say that the trial court abused its great discretion in awarding such fees.
This specification of error lacks merit.
For the above and foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] This "driveability package" consists of an intank electric fuel pump and fuel lines running to the carburetor. This package is designed to replace the mechanical fuel pump and engine mounted fuel lines in order to remedy problems caused by vapor lock and fuel foaming caused by the use of some unleaded fuels. The problems associated with these two conditions are similar to those plaintiff complained she was experiencing.