J^COOKS, Judge.
Richard and Maureen Morgan filed suit claiming violations of Louisiana’s Redhibition and Unfair Trade Practices laws. They sought to rescind the sale of a Mazda 929-S to them by Pete Abington Alexandria, Inc. Mazda Motor of America, Inc. was the distributor of the vehicle in question; and, it was named as sole defendant in the Unfair Trade Practices action. The Morgans prayed for recovery of the full purchase price, finance charges, and attorney’s fees. The seller and distributor answered the suit denying liability and alleging the Morgans’ complaints were fully remedied before suit was filed at no expense to them; and, the vehicle’s problems were not sufficient to constitute redhibitory defects which justified rescission of the sale or a reduction of the purchase price.
After a two day trial, the jury found the car possessed redhibitory defects sufficient to justify rescission of the sale. The jury also found Mazda Motor of America, Inc. was not guilty of unfair trade practices. It awarded the Morgans $21,500.00 in damages. Answering interrogatory eight (8) which asked the jurors “What amount of credit for plaintiffs’ use of the Mazda 929 should be awarded to the defendant,” they replied “0.00.” It is obvious, however, considering the initial sale price of the Mazda, that the jury in its award allowed a credit for use. The trial court signed a judgment in accordance with the jury verdict.
Subsequently, defendants moved for a judgment notwithstanding the verdict (JNOV) requesting a change in the judgment insofar as the verdict rescinded the sale. In the alternative, defendants requested a new trial or remittitur in accordance with La.C.C.P. art. |21811. The Morgans did not file any motion requesting a change in the jury verdict. Instead, while opposing defendants’ JNOV motion, the Morgans argued (in memorandum) the court should grant them additional relief by increasing the damage award and allowing attorney’s fees. Responding, defendants argued the Morgans did not file a timely motion for new trial or JNOV. The trial judge denied defendants’ motion for JNOV but concluded in reasons for judgment that, since defendants had filed a motion for JNOV, the court was free to amend the jury verdict as it saw fit. In accordance with this purported authority, the court then awarded total damages in the amount of $34,549, subject to a credit of $16,240; and, in addition, it awarded plaintiffs $10,000 in attorney’s fees. This appeal followed. Appellants assign the following trial court errors:
1. The jury’s finding that the Mazda 929 owned by plaintiffs contained within it a redhibitory vice or defect at the time of the sale which was sufficient under Louisiana law to warrant a rescission of the sale was manifestly erroneous.
*456 2. The trial court’s refusal to grant defendants’ motion for judgment notwithstanding the verdict to overturn the jury’s rescission of the sale was manifestly erroneous.
3. The trial court committed reversible error by refusing to grant defendants’ motion to allow the jury to inspect the car.
4. The trial court committed reversible error in allowing plaintiffs to present evidence from the owners of two other Mazda 929 automobiles with brake problems purported to be similar to those of appellees’ car.
5. The trial court’s post-trial award to plaintiffs above and beyond the jury verdict was manifest error. Plaintiffs failed to timely request post-trial relief from the trial as required by La.C.C.P. Art. 1811.
6. Even if the trial court had the discretion to make an additional award to plaintiffs post-trial, the trial court’s award of Ten Thousand and No/100s ($10,000.00) in attorney’s fees for a basic redhibition suit involving no complex issues which culminated in a two day jury trial was manifest error.
FACTS
On March 6, 1990, Richard and Maureen Morgan purchased a Mazda 929-S from Pete Abington Alexandria, Inc. The 929-S is Mazda’s “top of the line” luxury automobile. The car was purchased primarily to serve as Maureen’s transportation to and from work. The car was warranted for 3 years or 50,000 miles.
On their first visit to the dealership after purchasing the car, the Morgans complained that the vehicle’s air condition unit emitted a “moldy” smell when turned on. laShortly thereafter, they returned to the dealership complaining that the car was vibrating at high speeds and during gear shifting when the brakes were applied. To repair the vehicle, Pete Abington’s mechanics turned the brake rotors. On August 1,1990, with 10,075 miles showing on the odometer, the Mazda was returned to the dealership. On this occasion, the owners voiced the following complaints: (1) the air conditioner continued to have a bad odor when first turned on; (2) the center leather console was tearing apart; and (3) the brakes, when applied, were causing the steering wheel and gear shifter to vibrate. The seller replaced the console, ordered an evaporator for the air conditioner, and ordered brake pads and rotors. When the parts arrived on August 15, 1990, the repairs were completed. On March 31,1991, with 24,831 miles registered on the odometer, the Morgans visited the dealership still complaining that the car’s brakes were vibrating and the sunroof was “noisy.” Parts were ordered for the brakes which did not arrive until August 14, 1991. Eventually the front rotors, bearings and pads were replaced; the sunroof was adjusted; the air conditioner was flushed; and a crack in the dash panel was inspected.
On January 14, 1992, the Morgans returned the vehicle to the seller to repair the front dash panel. In May of 1992, Richard Morgan testified he called Pete Abington to complain again “about his brakes.” He also called Mazda Motor “looking for answers.” Frustrated in his attempts, Richard called the Better Business Bureau, who referred him to the Attorney General’s office. Later that month, the vehicle was returned to the seller again for brake vibration problems. The Morgans were informed the rotors were bad and new ones were ordered. On June 8, 1992, the rotors were replaced for the third time, along with the air conditioner’s evaporator. Disgusted and concerned with the potential for costly repairs when their warranty expired, the Morgans completed and forwarded a consumer complaint form to the Attorney General’s office. Mazda Motor of America denied all liability. Thereafter, the Morgans filed the present lawsuit.
At trial, the Morgans testified they did not trust the car; and, they expressed concern for their safety as a result of the vehicle’s constant brake problems. They stated the brakes still made a “roaring” sound when applied; the air conditioner still released a “moldy” odor when first turned on; the sunroof still rattled; there was an excessive amount of wind noise while driving; and, the leather console was tearing apart again. The *457 Morgans testified unequivocally they would not have purchased the car had they known of the defects. They also alleged Mazda Motor of America had actual, constructive and/or imputed knowledge of the udefects in the vehicle which were evidenced by service bulletins it issued which mentioned defects in the brakes and air conditioning system of the Mazda 929-S. By delivering the vehicle with knowledge of the defects, the Morgans alleged the distributor engaged in unfair and deceptive trade practices.
Defendants presented evidence at trial to show in the three years the Morgans owned the vehicle they traveled 58,000 miles; the ear did not experience a mechanical break down or failure during this period which caused it to be inoperable; the car was only out of service five days total for repairs; and, the buyers did not pay out-of-pocket expenses for the repairs which were fully warranted. Defendants also testified the brake problems were corrected in accordance with “new” factory authorized repairs which they alleged fully remedied the brake vibration at the time of trial.
1. Rescission of the Sale
Appellants first contend the jury manifestly erred in finding the ear possessed redhibi-tory vices or defects sufficient under Louisiana law to warrant rescission of the sale.
Redhibition is defined in La.Civil Code Article 2520 as follows:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
La.Civil Code Article 2545 also provides:
“The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys’ fees, is answerable to the buyer in damages.”
The purchaser of an automobile who brings a redhibition claim is not required to show the particular cause of the defects which render the vehicle unfit for its intended use. Rather, the buyer must prove only the actual existence of such defects. Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992); Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871 (1924). Collectively, multiple defects may form the basis of a redhibition action, even though many of the defects are minor or have been repaired. Young, supra; Snoke v. M & M Dodge, Inc., 546 So.2d 936 (La.App. 3d Cir.1989); Cangelosi v. McInnis Peterson Chevrolet, Inc., 373 So.2d 1346 (La.App. 1st Cir.1979). When a vehicle possesses defects which render its use inconvenient and imperfect to the extent the buyer would not have purchased it had he known of the defects, the buyer is entitled to a rescission of the sale and not just a reduction in the Isprice. Young, supra; Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La.App. 1st Cir.), writ denied, 391 So.2d 454 (La.1980).
Here, the buyers purchased a luxury vehicle for a considerable price. Understandably, they had “high expectations” regarding the car’s performance. Undisputedly, the vehicle displayed numerous problems which a purchaser ordinarily would not expect to encounter after buying a new car. Appellants do not deny the car was defective; neither do they contend the buyers abused the vehicle while using it. Richard Morgan stated he would not have purchased the car had he known of the defects. Several of the ear’s defects were minor and repaired. However, the brake problem was significant. The seller repaired the brakes on three separate occasions.
The accumulation of defects and successive repairs obviously convinced the jury that a reduction in price would not adequately compensate the buyers. Although the vehicle was not rendered totally useless for its intended purpose, still the jury was not clearly wrong in concluding a reasonable consumer would not purchase the automobile knowing it possessed multiple defects, including vices in the braking system.
2. Motion for JNOV by Defendants
Appellants contend the trial court manifestly erred by refusing to grant their *458 motion for judgment notwithstanding the verdict (JNOV). A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. Anderson v. New Orleans Public Service, 583 So.2d 829, 832 (La.1991). Denying the motion, the trial judge held:
“The Court finds defendants’ motion for JNOV should be denied on the issue of rescission. Reasonable minds could differ as to whether or not rescission should have been granted and the Court will not disturb the jury’s finding in this regard. There was a dispute between the parties as to the number and extent of the problems with the Mazda. The defendants only acknowledged the brake defect; the plaintiffs claimed there was a noise and odor problem, as well. The plaintiffs presented other witnesses who testified their automobiles had the same three problems as the Morgan vehicle. The jury was instructed that multiple defects can collectively form the basis of a redhibitory action, even though many of the defects are minor or have been repaired. Considering the dispute over the claimed defects and the credibility issues raised thereby, a JNOV on the issue of rescission would not be proper. Anderson, supra.”
We adopt the trial court’s reasons for ruling. This assigned error is without merit.
I fi3. Trial Motion to Inspect Car by Defendant
Next, appellants argue the trial court committed reversible error by refusing to grant its motion to allow the jury to inspect the car. This ruling, they urge, , unduly prejudiced their defense which questioned the buyers’ credibility and contentions that the vehicle was still evidencing problems.
Generally, visits by the factfinders to certain sites are warranted only in cases where the testimony is so confusing and conflicting that such excursions might aid the triers of fact through visualization of the object or site of the occurrence. Bico Enterprises v. Cantrell, 413 So.2d 260 (La.App. 3d Cir.1982). Apparently the trial court found the facts necessary for the jury to render judgment were sufficiently adduced at trial. She noted the buyers did not testify the car’s brakes continued to vibrate after the last repair. Instead, they stated the brake vibrations always reoccurred after repairs had been performed by the dealership. Inspection of the car would not have disproved this assertion. Furthermore, “multiple defects can collectively form the basis of a redhibition action even though many of the defects are minor or have been repaired.” Davidson, supra; Cangelosi, supra. Thus, even if the jury determined on inspecting the vehicle that the brakes did not vibrate or the air conditioner no longer emitted a foul odor, this evidence alone would not have defeated the buyers’ redhibitory claim.
4. Other Witnesses Testimony Regarding Similar Brake Problems
Appellants contend allowing two witnesses to testify they too experienced similar brake problems with their Mazda 929-S unduly prejudiced the defense by confusing and misleading the jury. However, we find the jury verdict suggests the contrary occurred. As mentioned, appellants did not dispute the car possessed several defects. The witness’ testimony obviously was introduced to show appellants had knowledge of the defects prior to delivery of the vehicle; and the distributor’s failure to disclose this information constituted an unfair trade practice. However, the jury concluded the distributor was not guilty of unfair trade practices. The evidence, thus, did not prejudice the defense.
5. The Morgans’ Failure to File a Separate JNOV Motion
Defendants urge the trial court erred in expanding the scope of the JNOV motion beyond the issues raised by them and proceeding to award an amended judgment favorable to the non-moving plaintiffs. We agree.
A party is authorized by La.C.C.P. art. 1811(A)(1) to move for JNOV within seven days, exclusive of legal holidays, after the signing of the judgment or, if notice of the signing kof the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has *459 mailed or the sheriff has served the notice. In the present case, defendants were the only party to timely file a motion for JNOV. The sole issue urged in this motion was the propriety of the jury’s rescission of the sale. Although the trial judge denied defendants’ motion; nevertheless, she concluded it was unreasonable to restrict the scope of the JNOV to only those errors of law specified by the moving party. The trial judge then proceeded to amend the quantum award; and, she further awarded plaintiffs an additional award of $10,000 in attorney’s fees.
Generally, in ruling on a motion for JNOV, the court should consider the whole record and draw all reasonable inferences in favor of the party opposing the motion. If the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the court believes reasonable men could not arrive at the verdict rendered, the granting of JNOV is proper. Anderson v. NOPSI, 583 So.2d 829 (La.1991); King as Tutrix of King v. Commercial Union Ins. Co., 425 So.2d 358 (La.App. 3d Cir.1982), writ denied, 429 So.2d 146 (La.1983). In applying this standard of proof, the court cannot weigh the evidence, pass on the credibility of witnesses, or substitute its judgment on the facts for the jury. Scherer v. Chaisson, 469 So.2d 510 (La.App. 3d Cir.1985). In reviewing a trial court’s grant of JNOV, the appellate court must determine whether the trial court’s findings in rendering JNOV were manifestly erroneous. Dufour v. Union Pacific Railroad Co. — Missouri Pacific Railroad Co., 610 So.2d 843 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993); Gibson v. Bossier City General Hospital, 594 So.2d 1332 (La.App. 2d Cir.1991).
In Parmelee v. Kline, 579 So.2d 1008 (La.App. 5th Cir.), writ denied, 586 So.2d 564 (La.1991), the Fifth Circuit reversed as erroneous the trial court’s rendering of a JNOV sua sponte. In Parmelee, after the jury rendered a verdict, no party moved for JNOV. The trial court, however, sua sponte, altered the allocation of fault and decreased the award. In reversing, the appellate court emphasized that La.C.C.P. art. 1811, supra, authorizes only a party to move for JNOV. The court concluded that "... Since only a party can move for a JNOV, it was error for the trial judge to do so on [his] own motion.”
While the present case is different from Parmelee because here defendants did move for JNOV, the Parmelee holding is still instructive and persuasive. If a court can only render a JNOV in response to a motion by a party, it logically follows the court should entertain only those issue(s) raised by the movant. Clearly, a motion for JNOV filed by a party on a |sspecific issue is not an invitation to the trial judge to second guess the jury on every issue presented at trial. This, in effect, deprives a party of his/her right to a jury trial. We do not believe the legislature intended to allow such “open season” review of jury verdicts by trial judges. In practice, a moving party would think “long and hard” before filing a JNOV motion fearing not only denial of the motion but opening the door to an even more onerous or less favorable judgment.
The only issue raised by defendants’ motion was whether plaintiffs were entitled to a rescission of the sale. The trial court should have properly restricted its inquiry to this question. To do more was manifest error. Therefore, we reverse and rescind the trial court’s amended judgment of July 12,1993. The judgment signed on March 11, 1993, rendered in accordance with the jury verdict, is hereby reinstated. We will not consider defendants’ last assignment of error which attacks the $10,000.00 award of attorney’s fees as excessive. This issue is now moot.
6. Appellees Untimely Answer
Appellees filed an answer on appeal. They contend the trial judge improperly granted appellants a credit for use of the vehicle. They concede in brief, however, this answer was not timely filed. La.Code of Civil Procedure Article 2133 provides a party who does not file an answer timely is barred from requesting modification, revision or reversal of the trial court’s findings. Laborde v. Laborde, 599 So.2d 475 (La.App. 3d Cir.), writ denied, 604 So.2d 1307 (La.1992). Therefore, this issue is not properly before the court.
*460 DECREE
For the foregoing reasons, we reverse and rescind the trial court’s amended judgment of July 12, 1993. The judgment signed on March 11, 1993 rendered in accordance with the jury verdict is hereby reinstated. All costs of this appeal are assessed to defendants-appellants.
REVERSED AND RENDERED.