JiGRISBAUM, Judge.
The defendants, J.J. Krebs & Sons, Inc. (hereinafter “J.J. Krebs”) and Coast Quality Construction Company (hereinafter “Coast”), appeal the judgment of the trial court granting the plaintiff, Toufic Nassif, rescission of the sale of the house, which was purchased from Sunrise Homes, Inc. (hereinafter “Sunrise Homes”) by Shirley Ann Nassif, with whom he entered into a Sale and Assumption. Plaintiff answered defendants’ appeal and appeals the trial court’s award of damages. We affirm in part, reverse in part, and amend in part.

ISSUES

The issues presented for review are:
(1) Whether the trial court erred in finding that the house contains a redhibitory defect and in granting rescission instead of quanti minoris;
12(2) Whether the trial court erred in finding that the foundation, as designed by J.J. Krebs, was defective, that J.J. Krebs failed to exercise the degree of care and skill customarily employed by other engineers engaged in the same profession in the Greater New Orleans area, and that J.J. Krebs’ negligence was the cause of the damages suffered by the plaintiff, Toufic Nassif;
(3) Whether the trial court erred in not finding plaintiff comparatively at fault;
(4) Whether the trial court erred in granting Coast indemnity from J.J. Krebs for attorney’s fees, which Coast is liable to the plaintiff, and whether it abused its discretion in awarding plaintiff attorney’s fees;
(5) Whether the trial court erred in not awarding plaintiff closing costs, expenditures for improvements, judicial interest from the date of sale, or any general damages; and
(6) Whether the trial court erred in granting a credit for use and deducting tax benefits from plaintiffs award.

FACTS AND PROCEDURAL HISTORY

This appeal involves the rescission of the sale of a house located at 2936 Keith Way in Woodmere South 2 of Jefferson Parish, Louisiana. Coast developed Woodmere South Subdivision and then built and sold the homes there. J.J. Krebs performed the engineering work and designed the foundation for the houses, which Coast built. On May 31, 1984, plaintiffs cousin, Shirley Ann Nas-sif, purchased this house from Sunrise Homes. Two months later, on July 31, 1984, the plaintiff, Toufic Nassif, entered into a Sale and Assumption with Ms. Nassif for the purchase of this house.
In September 1986, Mr. Nassif discovered that his house was experiencing differential settlement problems. He informed Coast of the problem and requested a new non-defective house. Coast refused to provide Mr. Nassif with a new house but offered to repair the problem. Mr. Nassif refused this offer, based |3on the recommendation of Mr. Lionel Flotte, Jr., a professional engineer, who investigated the problem and concluded that Coast’s repair method was inadequate.
This case went to trial, without a jury, on February 3 — 6, 1997. Judgment was rendered in favor of Mr. Nassif and against Coast, finding that the house contained a redhibitory defect, granting recission, and a damage award of $55,240.00, plus interest *455 and costs. The judgment was further rendered in favor of Coast, by way of indemnity, against J.J. Krebs for $55,240.00, plus interest and costs, less the value of the house. On September 3, 1997, after a hearing regarding attorney’s fees on May 6, 1997, the trial court rendered judgment in favor of Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P. (hereinafter “Lowe, Stein”) and against Coast for $141,646.31 in attorney’s fees and costs. The trial court further ordered that there be judgment granting full indemnity to Coast from J.J. Krebs for the $141,646.31, which it was ordered to pay plaintiff, Lowe, Stein, for attorney’s fees and costs.
ISSUE ONE — LAW AND ANALYSIS
Appellant, J.J. Krebs, contends that the trial court erred in finding that Mr. Nassifs house contained a redhibitory defect and in granting rescission, instead of quanti minoris. We disagree. The existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record establishes that the finding is manifestly erroneous. St. Claire v. Lewis, 550 So.2d 737 (La.App. 2d Cir.1989). La. Civ.Code art. 2520, in pertinent part, provides that
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or |4its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
It is clear from the record that the house experienced 13-14 inches of differential settlement in the foundation. Differential settlement refers to the foundation slab of a house settling unevenly, causing either an upward or downward slope in the house. Differential settlement of a certain magnitude can cause structural and plumbing problems, as well as disturb the comfort and livability of the home. All of the experts who testified agreed that appellee’s house experienced an excessive amount of differential settlement. Mr. Lloyd Held, an expert geotech-nical engineer, testified that he has never seen a house with a pile-supported foundation that experienced as much differential settlement as Mr. Nassifs house. The record establishes there is a noticeable drop from the front to the rear of the house. Accordingly, we find no error in the trial court’s conclusion that the house in question contains a redhibitory defect.
J.J. Krebs and Coast contend that the trial court erred in granting rescission, instead of quanti minoris, i.e., a reduction in the purchase price, and appellants argue the differential settlement in Mr. Nassifs house is not serious enough to render the house useless or so inconvenient to warrant rescission. We, again, disagree.
Based on expert testimony, repairs to Mr. Nassifs house would cost between $25,000.00 — $30,000.00. Furthermore, the testimony of Mr. Flotte, an expert in civil engineering specializing in foundation and structure design, stated that no one should reside in the house while these repairs were being done. Though the house was used after the differential settlement was discovered, and it can be repaired without suffering any permanent diminution in value or Igmarketability, we find that rescission is the appropriate remedy for the following reasons:
First, the house requires expensive, costly repairs to correct the differential settlement. Where defects are neither minor nor easily reparable, rescission is an appropriate remedy. Musemeche v. G & J Mobile Home Serv. & Supplies, 425 So.2d 791 (La.App. 3d Cir.1982). Second, considering Mr. Flotte’s testimony that the house should not be occupied while undergoing repairs, the house would be rendered useless for the period of time required to do the repairs. Last, expert testimony establishes there are several problems and risks associated with the repairs which need to be done. Mr. Flotte testified that the repair method Coast used to repair Mr. Ron Landis’ house, one of Mr. *456 Nassifs neighbors, was dangerous, unsanitary, and could cause the slab to crack. Mr. Landis testified that, after the repairs were done, there was cracking in the slab and ceiling of the house, a problem with water accumulating under the house, which caused carpet to rot, and that the house has experienced additional differential settlement. Furthermore, he testified that the repairs created extremely inconvenient and unsafe conditions. Accordingly, we find the defect in the house renders it so inconvenient that it must be presumed that Mr. Nassif would not have bought it had he known of the defect and, thus, we see no error in the trial court granting rescission, instead of quanti minoris.
ISSUE TWO — LAW AND ANALYSIS
J.J. Krebs also contends that the trial court erred in finding it failed to exercise the degree of care and skill customarily employed by other engineers engaged in the same profession in the Greater New Orleans area and that J.J. Krebs’ plans and specifications were faulty and defective and that its negligence was the cause of the plaintiffs damages. J.J. Krebs designed the foundation for Mr. Nassifs house and did the engineering work for all of the houses in | (¡Woodmere South Subdivision, including Mr. Nassifs house. Jefferson Parish Building Code Article 2813, regarding the design of the foundation of a home, provides as follows:
The Standards of the Code regarding the need for a pile foundation or the maximum design load capacity for the particular type of pile may be superseded by a subsoil investigation which is performed in accordance with Article 2801 or a pile load test which is performed in accordance with Article 2805 provided the subsoil investigation or pile load test is located within a 150 foot radius of the proposed foundation for a single boring or pile test. This distance can be increased to a 300 foot radius for a multi-soil borings or pile tests that recommended the same design load.
It was clearly established that the J.J. Krebs’ foundation design for Mr. Nassifs house did not conform with the requirements of the Jefferson Parish Building Code. Both Mr. Flotte and Mr. Jim Gore, a geotechnical engineer, stated in deposition that J.J. Krebs’ foundation design for Mr. Nassifs house violated the Jefferson Parish Building Code. Violation of a statute or regulation is sufficient to establish negligence where it is established that the statute protects against risks to class of persons to which plaintiff belongs. Faucheaux v. Terrebonne Consol., Gov’t, 597 So.2d 503 (La.App. 1st Cir.1992), writ granted, 599 So.2d 305 (La.1992), rev’d on other grounds, 615 So.2d 289 (La.1993), reh’g denied on remand, 625 So.2d 683 (La.App. 1st Cir.1993). Jefferson Parish Building Code Article 2813 establishes minimum building requirements for foundations of houses built in Jefferson Parish in order to protect against problems arising from inadequate foundations. It is designed to protect individuals, such as Mr. Nassif, from buying houses that are defective. Accordingly, we find that J.J. Krebs’ failure to adhere to these standards is a failure to exercise the requisite standard of care.
Furthermore, the testimony at trial indicated that J.J. Krebs’ design called for two feet of fill but when the fill beneath the house was measured, there was Lfour to four and one-half feet of fill. Experts testified that the differential settlement was caused by an overfill and the failure to perform the proper tests on the soil before designing the foundation. Coast built the foundation in accordance with J.J. Krebs’ specifications. J.J. Krebs had the responsibility of determining the proper amount of fill needed, was in the best position to determine this, and knew how the fill would affect the foundation. Thus, the evidence indicates that, when designing the foundation, J.J. Krebs failed to take into account the amount of fill already existing or was unaware of the already existing fill because it failed to investigate to determine if any did exist. Therefore, J.J. Krebs’ failure to comply with the Jefferson Parish Building Code, by performing the proper tests and determining the proper amount of fill, resulted in a defective foundation design. Accordingly, we see no error in the trial court’s ruling.
J.J. Krebs next contends that the trial court erred in finding that the damages suffered by Mr. Nassif and Coast were *457 caused by the foundation’s failure to perform as intended. Expert testimony established that the primary causes of the differential settlement in Mr. Nassifs house were the overfill beneath the house and J.J. Krebs’ failure to perform the proper soil investigation to determine that the maximum allowable load for a Class Nine 30-foot pile, appel-lee’s class of foundation, for Type 1 soil, the soil in Woodmere South Subdivision, is two tons and not four tons.
Mr. Held, an expert geotechnical-technical engineer, testified that the sand fill on appel-lee’s property was the cause of the excessive differential settlement. Mr. Flotte testified that the pile beneath appellee’s house was not sufficient to support the house. He stated that, had the piling been adequate to carry the house, the house would have remained level, suffering only about one-quarter to one-half of an inch of settlement. J.J. Krebs informed Coast that the pile could handle a four-ton load when, in actuality, it could only handle a two-ton load. | «Based on this testimony, we find that, had J.J. Krebs performed a soil investigation, it could have determined the proper amount of load which a Class Nine 30-foot pile on Type 1 Soil could handle and that then the excessive differential settlement would not have occurred. Accordingly, we cannot say that the trial court’s conclusion regarding causation is manifestly erroneous. See Duffy v. State of La., Through Dep’t of Transp. and Dev., 95-1398 (La.App. 1st Cir. 2/23/96), 668 So.2d 1349.
ISSUE THREE — LAW AND ANALYSIS
J.J. Krebs also contends that the trial court erred in failing to find Mr. Nassif comparatively at fault. Appellant further argues that the appellee had a duty to mitigate his damages and that he failed to do so. We disagree.
There is no evidence to support a finding of comparative negligence on the part of Mr. Nassif. Mr. Flotte, an expert civil engineer specializing in foundation and structure design, testified that the patio which Mr. Nassif added to house had no significant impact on the failure of the foundation. There is no evidence in the record to support appellant’s contention that the patio was a cause-in-fact of the differential settlement that appellee’s house experienced. Accordingly, we do not find the trial court’s failure to allocate fault to the appellee manifestly erroneous.
Appellant, J.J. Krebs, also contends that the trial court erred in not reducing appellee’s award for his failure to mitigate his damages. Appellant’s contention is that appellee was required to allow his house to be repaired to mitigate his damages. We disagree. Mr. Nassif was advised by an expert not to allow the repair method Coast used to repair his house. The testimony at trial indicated that this method was dangerous, unsanitary, and extremely inconvenient. Mr. Nassif was advised that no one should live in the house while repairs were ongoing. Coast did not intend to offer relocation while performing the repairs, as testified to by appellee’s neighbor, Mr. Landis, who allowed Coast 19to attempt to repair his house. Accordingly, Mr. Nassifs refusal to allow Coast to repair his house was not unreasonable or impracticable. Accordingly, this argument lacks merit.
ISSUE FOUR — LAW AND ANALYSIS
J.J. Krebs further contends that the trial court erred in granting indemnity to Coast against it for attorney’s fees, which Coast is hable to appellee under La. Civ. Code art. 2545. J.J. Krebs and Coast contend that the trial court abused its discretion in awarding attorney’s fees to the appellee. La. Civ.Code art. 2545 provides for the recovery of attorney’s fees for the buyer of a defective product. A manufacturer is presumed to know that the thing he sells has a redhibitory defect. La. Civ.Code art. 2545. As vendor-builder, the seller of a house is deemed to be in bad faith and liable to the buyer for reasonable attorney’s fees in an action for rescission. Goodman v. Roberts, 587 So.2d 807 (La.App. 3d Cir.1991) and A. Copeland Enterprises v. Harimaw, Inc., 528 So.2d 707 (La.App. 5th Cir.1988). Therefore, Coast, as vendor-builder of Mr. Nassifs house, is liable to appellee for attorney’s fees in his action for rescission. The trial court rendered judgment in favor of Lowe, Stein for attorney’s fees and costs in the amount of $141,646.31 against Coast and granted full *458 indemnity in favor of Coast against J.J. Krebs for the amount Coast was ordered to pay Lowe, Stein.
Generally, attorney’s fees are not allowed except where authorized by statute or contract. Maloney v. Oak Builders, Inc., 235 So.2d 386, 256 La. 85 (La.1970). “Statutes that provide for an award of attorney’s fees should be strictly construed, because such an award is penal in nature.” Ditcharo v. Stepanek, 538 So.2d 309, 314 (La.App. 5th Cir.1989) (citing Frank L. Beier Radio v. Black Gold Marine, 449 So.2d 1014 (La.1984)). In Ditcharo, supra, the plaintiff was awarded attorney’s fees against a home seller. The trial court held the home seller, the real estate agent, and the termite inspector solidarily hable 110for attorney’s fees. Attorney’s fees against the seller were awarded pursuant to La. Civ.Code art. 2545, supra, and against the real estate agent and the termite inspector because of their negligence. This Court found that the real estate agent and the termite inspector could not be held hable for attorney’s fees when their liability was based in negligence; thus, only the home seller was hable for attorney’s fees. Here, the trial court held the appellant, J.J. Krebs, hable for attorney’s fees when its liability is based in neghgence and there is no statute or contract providing for an award of attorney’s fees against it. Accordingly, we find that the trial court was correct in awarding the appel-lee attorney’s fees against Coast under La. Civ.Code art. 2545; however, it erred in granting Coast full indemnity against J.J. Krebs for attorney’s fees, which it is liable to Mr. Nassif under La. Civ.Code art. 2545.
As to the amount of attorney’s fees awarded, the trial court is afforded great discretion in awarding attorney’s fees specifically authorized by statute as an element of recovery, and factors to be considered in evaluating the reasonableness of fees sought to be recovered should not limit the exercise of the trial court’s discretion. Buteau v. Leleux, 591 So.2d 1261 (La.App. 3d Cir.1991). The record indicates that, and appellee admitted, $2,680.00 included in the judgment is unrelated to this case and, thus, should be deducted from the judgment. Furthermore, the record indicates there are entries totaling $3,038.00, which appellee failed to establish as related to work on this case and which he fails to account for in his brief. Accordingly, the award of $141,646.31 is reduced by $5,718.00 to become $135,928.31.

ISSUE FIVE—LAW AND ANALYSIS

The appellee, Mr. Nassif, in his answer to this appeal, contends the trial court erred in not awarding him closing costs, expenditures for improvements, | injudicial interest from the date of sale, instead of from the date of judicial demand, or any general damages.

Closing Costs and Expenditures for Improvements

We find that the trial court was manifestly erroneous in failing to award closing costs. La. Civ.Code art. 2545 specifically provides for a buyer’s reimbursement for reasonable expenses occasioned by the sale. Accordingly, the judgment in favor of Mr. Nassif is increased in the amount of $4,747.43.
La. Civ.Code art. 2545 also provides for reimbursement to the buyer for costs for preservation of the thing. Here, appellee is seeking reimbursement for improvements for which reimbursement is not provided. Preservation of the thing connotes maintaining the thing in the condition it is in when purchased, whereas improvements indicate additions to the house for one’s own benefit. See La. Civ.Code arts. 804 and 806. Accordingly, appellee is not entitled to reimbursement for improvements he made to the house for his own benefit.

Interest

Appellee contends that the trial court erred in awarding judicial interest from date of sale instead of judicial demand. La. Civ.Code art. 2545 was amended by Acts 1993, No. 841, § 1, eff. Jan. 1, 1995, to provide for interest from the time the price was paid by buyer in an action for rescission of a defective thing. Prior to that, the buyer, who was granted rescission, was entitled to interest from date of judicial demand based on a rule established by jurisprudence. See Thomson v. Cobb, 570 So.2d 145 (La.App. 3d Cir.1990), writ denied, 572 So.2d 72 (La.1991).
*459 No ease law was presented to us nor have we found any ease law specifically addressing the issue of whether La. Civ.Code art. 2545’s provision for payment of judicial interest from the date the price was paid applies retroactively. Accordingly, we must first address this issue. La. Civ.Code art. 6 | ^provides, “In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.”
The Louisiana Supreme Court and this Court, in applying La. Civ.Code art. 6, used a two-fold inquiry. “First, it must be ascertained whether the enactment expresses legislative Intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends. If no such intent is expressed, the enactment must be classified as either substantive, procedural, or interpretive.” State of La. in the Interest of T.T.L, 96-581 (La.App. 5th Cir. 1/28/97), 688 So.2d 142, 144 (citing Cole v. Celotex Corp., 599 So.2d 1058 (La.1992)). See also Keith v. United States Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180. The enactment to the amendment to La. Civ.Code art. 2545 does not express such an intent. Thus, it must be classified.
Substantive laws either establish new rules, rights, and duties or change existing ones, while interpretative laws merely establish the meaning of the statute had from the time of its enactment. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of laws.
State in the Interest of T.T.L., supra, at 144 (citation omitted). We find that the amendment to La. Civ.Code art. 2545 is substantive because it establishes a new right. That new right is the buyer’s right of a defective thing in an action for rescission to interest from the date price was paid instead of irom the date of judicial demand. See Martino v. Sunrall, 619 So.2d 87 (La.App. 1st Cir.1993) and Morris v. Stewart, 617 So.2d 978 (La.App. 4th Cir.1993).
Therefore, since this suit was filed before the enactment of the amendment to La. Civ. Code art. 2545, the amendment does not apply here. Accordingly, the trial court did not err in awarding interest from date of judicial demand.

General Damages

The decision of whether to award non-pecuniary damages in a redhibition action is in the discretion of the trial court and should not be disturbed absent manifest error. Snoke v. M & M Dodge, Inc., 546 So.2d 936 (La.App. 3d Cir.1989). We cannot say the trial court’s decision not to award damages for mental anguish is manifestly erroneous.
ISSUE SIX — LAW AND ANALYSIS
Appellee last contends that the trial court erred in granting appellants a credit for use and deducting tax benefits from the appel-lee’s award.

Credit for Use

In a redhibitory action, the decision to grant a party credit for use is within the discretion of the trial court. Meche v. Harvey, Inc., 95-848 (La.App. 3d Cir. 12/6/95), 664 So.2d 855, writ denied, 96-0084 (La.3/8/96), 669 So.2d 402. In determining credit for use, the buyer’s use must be weighed against the inconvenience of the damaged thing. Id.
The trial court awarded $97,000.00 credit for use using $580.00 per month from June 1984 through December 1990 and $700.00 per month from January 1991 through January 1997. We find that the credit for use was appropriately granted, except for the 18-month period in 1994-1995 when the house was unused. At this time, the house was neither used by Mr. Nassif nor rented to tenants. Accordingly, the credit for use is reduced by $12,600.00 (18 X $700.00 = $12,600.00) and Mr. Nassifs award increased.

Tax Deduction

Appellee, in his answer to this appeal, asks this Court to modify and increase the award the trial court granted him in five material respects. The other four are addressed above. Appellee’s last contention is that the *460 trial court committed legal error in deducting tax benefits of $28,108.00 from his award. This tax deduction was based on Mr. Nassifs testimony on direct examination | i4and exhibits he introduced. Moreover, he cites no law establishing that this deduction is a legal error. Accordingly, we have no basis for reversing the trial court decision to deduct the tax benefits Mr. Nassif received from his award.
For the reasons assigned, the judgment of the trial court is affirmed in all respects, except for its order requiring J.J. Krebs to indemnify Coast for the attorney’s fees and costs, which it was ordered to pay Lowe, Stein. The judgment is amended to reduce the award of attorney’s fees to $135,928.31 and to increase Mr. Nassifs award by $4,747.43 for closing costs and $12,600.00 for the reduction in the credit for use granted by the trial court. Accordingly, Mr. Nassifs award is increased to $72,587.43, plus interest and costs. Each party to this appeal is to bear its respective costs.

AFFIRMED IN PART, REVERSED IN PART, AND AMENDED IN PART.